# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-1252

SHEILA WHITE,

*Petitioner*,

*v.*

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT,

*Respondent.*

———————

Petition for Review of an Order of the
Department of Housing & Urban Development.
No. 05-99-0045-8

———————

ARGUED JANUARY 5, 2006—DECIDED FEBRUARY 2, 2007

———————

Before FLAUM, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Sheila White filed a complaint with the United States Department of Housing and Urban Development ("HUD"), claiming that property owner Gertie Wooten violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(c). At issue is whether Wooten's comments to White indicated a preference against renting to White on the basis of "familial status," which under the FHA means at least one minor child living with a parent or guardian. After holding a hearing at which Wooten did not appear, the administrative law judge ("ALJ") concluded that White failed to prove Wooten's statements indicated a preference against renting on the

basis of White's familial status. The ALJ also refused to allow White to amend her complaint after the close of the evidentiary hearing to include new allegations that, White contends, first came to light at the hearing. We agree with the ALJ's decision to deny White's motion to amend her complaint. However, we disagree that White failed to prove that Wooten discriminated against her on the basis of her familial status. We therefore reverse the ALJ's decision as to White's § 3604(c) claim.

## I. BACKGROUND

White filed an administrative complaint with the Secretary of HUD, alleging that Wooten violated 42 U.S.C. § 3604(c)[1] by engaging in discriminatory conduct when she told White that she would not rent an apartment to her because she was not married and had two children. The Secretary of HUD issued a Determination of Reasonable Cause and Charge of Discrimination in April 2001, alleging that Wooten discriminated against White because of her familial status. Shortly thereafter, the ALJ granted White's motion to intervene on her own behalf. In July 2003, after prolonged discovery, White filed a motion she entitled a "motion for summary judgment." The ALJ subsequently scheduled a hearing for February 4, 2004.

Despite being duly notified about the hearing, neither Wooten nor anyone on her behalf appeared. The ALJ, acting on HUD's request, found Wooten in default, and

---

[1] White's original administrative complaint alleged that Wooten violated 42 U.S.C. § 3604(a) as well. Section 3604(a) makes it illegal to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of . . . familial status." White eventually withdrew her § 3604(a) claim; therefore, the ALJ addressed only White's § 3604(c) claim.

directed White to present a *prima facie* case that Wooten had violated 42 U.S.C. § 3604(c). Three witnesses testified at the hearing: White; White's grandfather, Robert Houston; and a family friend, Marsha Johnson.

White testified that, in 1998, she was living with Houston and looking for an apartment for herself and her two children (then ages five and nine) when she saw a newspaper advertisement for a two bedroom apartment for rent in Harvey, Illinois. On August 21, White called the telephone number listed in the notice to inquire about the apartment. White claimed that she spoke to an elderly woman with "broken" speech who stated that she would not rent to White because White had children and was not married. White also stated that after the conversation ended she wrote down detailed notes recounting the conversation. The notes read:

Me    I was calling about the apartment in Harvey.

Her   How many in your family?

Me    3. 1 adult & 2 small children

her   Are you married?

. . . . . . .

Me    No

her   Well she can't rent to you because you have two children and no husband and this girl has to pay her mortgage.

Me    What do that have to do with me. That's a form of discrimination.

her   I don't know you. I would have to see you, met you—that's not discrimination this girl has to pay her mortgage and you don't have a husband and you have children.

Me    but you don't know me how can you judge me by a phone call?

her   You are not married this . . . . .

Me    thank you very much, but I'm not interested.
      I hung up.

On September 17, White noticed another newspaper advertisement for the same apartment that listed the same telephone number. She called to inquire about the apartment, but unlike before, White stated that she was married rather than single. According to White, she spoke with the same "elderly lady with broken English" with whom she spoke in the first telephone conversation. This time the woman identified herself as Gertie Wooten. White also stated that, as with the previous phone call, she wrote down detailed notes that recounted her conversation with Wooten. Those notes state:

Me.   I called about the apartment

her   how many in your family

me    3            . . . . . . .

her   3 what are you married?

M     Yes

her   how many kids?

Me    1

her   do your husband work

              . . . . . . .

Me    Yes with CTA

her   Do you work?

Me    Yes with Blue Cross

her   Well the apartment has a large dining room
      kit two bedrooms. Its on the 1st floor.

              . . . . . . .

me    how is the neighbor

her   wait A—minute let me finish

her   The house has double locks on the gate front and back it's a very nice house. The area is what you make it. You are going to have bad people everywhere you go. If you are

. . . . . . .

thinking out selling drugs or using drugs don't come here. If you have more people in the apartment than whats on the lease you will be escorted by the police. If you think out selling drugs or using drugs this place is not for you. My grandson stay with me and he has not brought anybody here. I have 5 daughter and two sons died. One died of cancer the other dropped dead. I have one daughter in California One just steped down from a supervisory in the lab at Cook County Hospital. But you can come by at 12:00 Sat.

. . . . . . .

Me    Whats your name.

her   Gertie Wooten

. . . . . . .

White stated that after this second telephone conversation she filed a complaint with HUD; that complaint forms the basis of this case. In November 1998, White also filed a complaint with the Cook County Commission on Human Rights, alleging that she was denied the opportunity to rent an apartment on the basis of her "marital status" and "parental status."[2]

---

[2] White testified that, although the Cook County Commission entered a default judgment against Wooten for failing to ap-
(continued...)

White's grandfather, Houston, testified that he received a telephone call from an unidentified woman asking to speak to White shortly after White filed her Cook County complaint. When Houston replied that White was not home, the caller began asking a number of questions about White because she had called about renting an apartment. The following day, the same unidentified woman called Houston again asking for White. When Houston again replied that White was not home, the caller began shouting and swearing. Houston unsuccessfully attempted to calm the caller, and then hung up the phone; he informed White of the telephone calls when she returned home.

Family friend Marsha Johnson's testimony corroborated Houston's version of events surrounding the telephone calls. She stated that she was with Houston when he received the two calls. She added, however, that she saw the name "Wooten, G" displayed on the caller ID box after each call. She also stated that she was present when Houston informed White of the telephone calls.

Before the hearing concluded, White orally requested to amend the pleadings to include a harassment charge under 42 U.S.C. § 3617, based on Houston's and Johnson's testimony that Wooten twice telephoned Houston in response to White's housing discrimination claims. White acknowledged that it was unlikely that Wooten was even aware of the HUD complaint at the time of the harassing telephone calls because it had not yet been processed for "jurisdictional reasons." White did state, however, that she believed it was very likely that Wooten obtained

---

[2] (...continued)
pear or respond to the charge, the Commission nevertheless dismissed the charge because White did not appear for the required evidentiary hearing.

Houston's telephone number from the Cook County complaint that was served on her. To supplement her request, White filed a "Motion to Amend Complainant-Intervenor's Complaint to Conform To The Proof Adduced at Trial" ("Motion to Amend"), alleging that Wooten violated § 3617.

On December 3, 2004, in a written decision, the ALJ concluded White failed to show by a preponderance of evidence that Wooten violated § 3604(c). The ALJ first determined that White did not prove that she even spoke with Wooten during the first telephone call, citing the fact that the speaker consistently spoke in the third person, such as when she stated, "[T]his girl has to pay her mortgage and you don't have a husband and you have children." And, the ALJ continued, even if White could prove that she spoke with Wooten, she did not prove that the telephone call violated § 3604(c) because an "ordinary listener" would not have believed that the speaker discriminated against her because of familial status; rather, the speaker indicated a concern with financial matters.

The ALJ also denied White's Motion to Amend to add the harassment claim under 42 U.S.C. § 3617. He stated that amending the complaint would be prejudicial to Wooten because she was not given notice of the new allegation. The ALJ further noted that White knew or should have known about the allegedly harassing telephone calls that Houston received since the beginning of the litigation and, therefore, she should have amended her complaint earlier. The ALJ also denied the motion for substantive reasons, concluding that there was nothing improper about the first telephone call because the caller asked only for information, and that the second telephone call did not violate § 3617 because: (1) the conduct was not sufficiently "egregious" to constitute intimidation, threats, or interference within the meaning of the FHA; (2) Houston was an "uninvolved third party" who did not exercise, aid, or

encourage White in filing her discrimination claim; and (3) there was no evidence that the telephone calls were made "with a discriminatory motive or purpose."

The HUD Secretary did not modify or reverse the ALJ's decision, and it became a Final Agency Order on January 3, 2005. *See* 42 U.S.C. § 3612(h)(1).

## II. ANALYSIS

White filed this petition for review, challenging the ALJ's decision on two grounds. First, White claims that the ALJ erred by finding that Wooten did not discriminate against her because of her familial status, as proscribed by 42 U.S.C. § 3604(c). White also claims that the ALJ erred by denying her motion to amend her pleadings to include a claim of harassment under 42 U.S.C. § 3617.

A. *White Established Her Claim for Discrimination Based on Familial Status.*

White argues that the ALJ's finding that Wooten did not violate 42 U.S.C. § 3604(c) was erroneous because (1) there was sufficient evidence that the first telephone call could be attributed to Wooten; and (2) Wooten's statements evince discrimination based on White's familial status. We deferentially review the Secretary's final determination as to § 3604(c) claims, and we will reverse only if the determination is legally or procedurally unsound, or is "unsupported by substantial evidence." *See* 5 U.S.C. §§ 706(2)(A), (D)-(E); *Jancik v. Dep't of Hous. & Urban Dev.*, 44 F.3d 553, 555 (7th Cir. 1995). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Jancik*, 44 F.3d at 555-56.

Section 3604(c) makes it illegal to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c); *see City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995) (noting that in 1988, Congress extended the FHA to proscribe "'familial status' discrimination, *i.e.*, discrimination against parents or other custodial persons domiciled with children under the age of 18"). As a result, White needed to present evidence that: (1) Wooten made a statement; (2) the statement was made with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination against her on the basis of her status as a parent living with minor children. *See* 42 U.S.C. § 3604(c). The parties do not dispute that the statements were made in connection with the sale or rental of a dwelling. *See* 24 C.F.R. § 100.75(b) (2006) (prohibitions in § 3604(c) extend to oral statements by person engaged in sale or rental of dwelling).

At issue first is whether Wooten was the person to whom White spoke during the August 21 telephone call. The respondent argues that we should adopt the ALJ's finding that the statements in the call could not be attributed to Wooten. In support of his finding, the ALJ had reasoned that the speaker in the August 21 call made reference to another person who needed to pay the mortgage, and, therefore, the speaker could not have been Wooten herself.

We, however, conclude that the uncontested evidence presented by White at the hearing demonstrates that she spoke with Wooten on August 21. White testified that she called the same telephone number on both August 21

and September 17. She stated that the woman with whom she spoke during the first telephone conversation was an "elderly woman" who spoke "broken English." After she dialed the same telephone number on September 17, White recognized the woman who answered the phone as the same person with whom she had spoken nearly a month earlier. This same person identified herself as Wooten later in the call. As Wooten did not appear at the hearing, White's testimony that she spoke with the same person on both occasions was unrefuted. There is no evidence in the record, for example, that Wooten lived with another person at that time who might have spoken to White. Moreover, when White's counsel expressed her intent to call a government investigator at the hearing to testify that Wooten admitted making the statements in the telephone calls, the ALJ asked whether "the only cloud that the investigator would have dissipated is who made the two statements on the phone to Sheila White." After receiving an affirmative answer, the ALJ responded, "she admitted to them so we'll not have that dep." HUD's attorney at the hearing then stated, "Gertie [Wooten] admitted, yes, being the voice on the other end of the phone line when Sheila called her."

Moreover, the testimony to which the ALJ pointed does not contradict White's uncontested testimony that she spoke with the same person during both telephone calls. The ALJ reasoned that because the speaker in the first call made several references to another person who needed to pay the mortgage, the speaker could not have been Wooten. Although it is true that White's notes reflect that Wooten stated, "this girl has to pay her mortgage," the words "this girl" and "her" in the speaker's statement may have represented nothing more than colloquial references to the speaker herself, not references to another person. Or the speaker may not have wished to identify herself as the property owner until she had spoken with

the caller further. Most importantly, however, White's evidence that she spoke with the same person in both calls was not disputed. Therefore, we conclude that the uncontested evidence demonstrates that Wooten made the statements in the August 21 telephone call.

We therefore turn to the final requirement in White's § 3604(c) claim, that the statements indicate any "preference, limitation, or discrimination" based on White's familial status. The FHA defines "familial status" as "one or more individuals (who have not attained the age of 18 years) being domiciled with" a parent or someone with an equivalent custodial relationship. 42 U.S.C. § 3602(k)(1); *see also* 24 C.F.R. § 100.20 (2006). It is undisputed that at all times relevant to this matter, White had two children under the age of eighteen years who resided with her. Thus, the FHA protects White and her children because of their "familial status."

Actions prohibited under § 3604(c) include using words or phrases which convey that dwellings are not available to a particular group of persons because of familial status and expressing to prospective renters or any other persons a preference or a limitation on any renter because of familial status. 24 C.F.R. § 100.75(c)(1)-(2) (2006). To determine whether a statement indicates impermissible discrimination on the basis of familial status, an "ordinary listener" standard is used. *See Jancik*, 44 F.3d at 556; *see also Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d Cir. 1991) (applying "ordinary reader" standard to analysis of advertisement under § 3604(c)). The inquiry under this objective standard is whether the alleged statement would suggest to an "ordinary listener" that a person with a particular familial status is preferred or disfavored for the housing in question. *See Jancik*, 44 F.3d at 556. The ordinary listener "is neither the most suspicious nor the most insensitive of our citizenry." *Id.* at 556 n.4 (citing *Ragin*, 923 F.2d at 1002).

White argues that Wooten's statements in the August 21 conversation indicate that Wooten disfavored White's familial status for the apartment in question. We agree. The ALJ disregarded Wooten's statements about White's family and concluded that Wooten "was clearly more concerned with financial matters than the make-up of [White's] family" because she expressed her need to "pay her mortgage." *See Soules v. Dep't of Hous. & Urban Dev.*, 967 F.2d 817, 821 (2d. Cir. 1992) (stating that the FHA was "not intended to 'prevent a landlord from determining that a family is otherwise qualified before agreeing to rent to them'") (quoting 134 Cong. Rec. H4681 (daily ed. June 23, 1988) (remarks by Representative Synar)).

Wooten's statements in the August 21 conversation, however, do not support the ALJ's conclusion that Wooten's only concern was White's ability to pay the rent. Immediately after learning that White was an unmarried mother of two small children, Wooten told White she would not rent to her. In fact, that White was an unmarried mother of two small children was all that Wooten knew about White at that point. Wooten had not asked White a single question about her finances (nor did she at any point in the conversation). She possessed no information whatsoever about White's income, credit history, assets, or liabilities. For all Wooten knew, White could have been a multimillionaire. Under these circumstances, substantial evidence does not support the ALJ's conclusion that Wooten refused to rent to White on August 21 because Wooten was concerned with White's ability to pay the rent. Rather, Wooten's statements would indicate to an ordinary listener that Wooten disfavored White on the basis of her familial status. As Wooten refused to rent the apartment armed only with the knowledge that White was a single mother of two small children, an ordinary listener would find Wooten assessed White's

ability to pay her rent based on her familial status, not on her financial situation.

The respondent also argues that the statements indicate a preference based only on White's marital status, not one based on her familial status. The respondent is correct that the FHA does not include marital status among its protected classifications. *See* 42 U.S.C. §§ 3604(a)-(f), 3605(a), 3606 (omitting "marital status" from categories of protected classes under the FHA); *Soules*, 967 F.2d at 821 ("Congress' primary concern [in passing the FHA] was to eliminate direct discrimination against families *with children*.") (emphasis added); *Doe v. Butler*, 892 F.2d 315, 326 (3d Cir. 1989) (Roth, J., dissenting) (quoting the legislative history of the FHA's definition of "familial status" to show that Congress did "not intend this definition to include marital status"). *Compare* 42 U.S.C. § 3602(k)(1) (omitting any mention of marriage from the statutory definition of "familial status") *with* Chicago, Illinois Ordinance § 5-8-030(c) (1998) (making it illegal for landlord to refuse to rent "within the city of Chicago because of the . . . marital status . . . of the proposed buyer or renter").

In support of its argument, the respondent points to the parties' September telephone conversation. During that discussion, Wooten agreed to show the apartment thinking White was married, to an employed husband, and had one child. These statements, however, do not change our conclusion that Wooten's comments in the August conversation indicate discrimination on the basis of White's familial status. In the August telephone call, Wooten stated repeatedly that she would not rent to White because she had children but not a husband. Wooten's statements suggest that she would have been willing to rent to a single woman; because White stated she had children, however, Wooten told White she would not rent to her. The August conversation thus indicates that

White's representation that she had children, not that she was unmarried, constituted the reason for Wooten's refusal to rent to her.

We conclude that White has demonstrated that Wooten's statements indicate disfavor for her familial status because her statements would allow an "ordinary listener" to infer she had a preference against White due to her familial status. *See Jancik*, 44 F.3d at 556 (finding defendant's statements that he "did not want any families with children . . . quite clearly would suggest to an 'ordinary' listener that [defendant] had a preference or limitation based on family status"); *Kormoczy v. U.S. Dep't of Hous. & Urban Dev.*, 53 F.3d 821, 824-25 (7th Cir. 1995) (determining that landlord's explanation "that elderly people lived in the building and kids were not wanted in the building" constituted evidence of discrimination based on familial status). Accordingly, substantial evidence does not support the ALJ's conclusion that White failed to establish a violation of §3604(c), and we reverse the decision against her on this claim.

B. *White Was Not Entitled to Amend Her Complaint to Add a Claim Under 42 U.S.C. § 3617.*

White next argues that the ALJ erred when he denied her motion to amend her complaint to conform to evidence presented at the evidentiary hearing. That evidence, White claims, demonstrated that her grandfather, Houston, was subjected to Wooten's "campaign of harassment" in response to White's filing of FHA claims. We review an ALJ's denial of a motion to amend a discrimination charge for abuse of discretion, *Looper Maintenance Service, Inc. v. City of Indianapolis*, 197 F.3d 908, 914 (7th Cir. 1999), and we find no error.

The FHA makes it unlawful to intimidate or threaten any person who exercises or enjoys any right granted or

protected by the FHA. 42 U.S.C. § 3617; 24 C.F.R. § 100.400(c)(4). To state a § 3617 claim, White must show, among other things, that Wooten "coerced, threatened, intimidated, or interfered with [her] on account of [her] protected activity under the FHA[ ]." *East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 563 (7th Cir. 2005).

The ALJ denied White's request to amend her complaint to add a claim under § 3617. The federal regulations set forth the circumstances under which a party may amend pleadings in an administrative proceeding under the FHA. As relevant here, the regulations provide:

> (b) By leave. Upon such conditions as are necessary to avoid prejudicing the public interest and the rights of the parties, the ALJ may allow amendments to pleadings upon a motion of the parties.

> (c) Conformance to the evidence. When issues not raised by the pleadings are reasonably within the scope of the original charge or notice of proposed adverse action and have been tried by the express or implied consent of the parties, the issues shall be treated in all respects as if they had been raised in the pleadings, and amendment may be made as necessary to make the pleadings conform to the evidence.

24 C.F.R. § 180.425(c) (2006).

White first argues that the word "shall" in 24 C.F.R. § 180.425(c) means that any issue presented at the hearing *must* be treated as if raised in the pleadings. But the regulation does not go this far. Instead, it provides that issues are to be treated as if raised in the pleadings only when, among other things, the issue not initially raised is "reasonably within the scope of the original charge" or notice of proposed adverse action. Here, how-

ever, the conduct giving rise to White's § 3617 claim was not within the original charge's scope. Whether to grant White's motion to amend her pleadings was thus discretionary.

Although White was well aware of the calls received by her grandfather at the time she filed her charge, she did not seek to add the new claim until the case was virtually complete. At the hearing, White acknowledged that she learned of the calls in November 1998, at the time they occurred. Yet it was not until 2004 that White sought to add the new charge. Although Wooten was herself responsible for multiple delays in this matter, we cannot find an abuse of discretion in the ALJ's conclusion that White "should have acted long ago" to seek to add a new claim. And on this basis, we affirm the ALJ's decision to deny White's motion to amend her complaint.

### III.  CONCLUSION

Accordingly, we AFFIRM the ALJ's denial of White's motion to amend her complaint. However, we REVERSE the ALJ's decision as to White's § 3604(c) claim.

A true Copy:

　　　　Teste:

　　　　　　　　　　　　　_____
　　　　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　　　　*Appeals for the Seventh Circuit*

USCA-02-C-0072—2-2-07