**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 12-2096**

───────────

MICHAEL COREY,

        Petitioner,

        v.

THE SECRETARY, UNITED STATES DEPARTMENT OF HOUSING & URBAN
DEVELOPMENT, on behalf of: Delores Walker, G.W., by and
through Delores Walker, his legal guardian,

        Respondent.

───────────

**No. 12-2239**

───────────

UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT,
Office of the Secretary, on behalf of: Delores Walker,
G.W., by and through Delores Walker, his legal guardian,

        Petitioner,

        v.

MICHAEL COREY,

        Respondent.

───────────

On Petition for Review of an Order of the Department of Housing
and Urban Development. (10-M-207-FH-27)

───────────

Argued: May 15, 2013           Decided: July 5, 2013

───────────

Before DAVIS, WYNN, and DIAZ, Circuit Judges.

───────────

Petition for review denied; Cross-application for enforcement granted, by published opinion. Judge Diaz wrote the opinion, in which Judge Davis and Judge Wynn joined.

––––––––––

**ARGUED:** Frederick F. Holroyd, II, HOLROYD & YOST, Charleston, West Virginia, for Petitioner/Cross-Respondent. Christopher Chen-Hsin Wang, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent/Cross-Petitioner. **ON BRIEF:** Thomas E. Perez, Assistant Attorney General, Dennis J. Dimsey, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent/Cross-Petitioner.

––––––––––

DIAZ, Circuit Judge:

Petitioner/Cross-Respondent Michael Corey appeals a final agency order of the Secretary of the United States Department of Housing and Urban Development (the "Department"). The Secretary determined that Corey had committed intentional and egregious violations of the Fair Housing Act ("FHA") by discriminating on the basis of disability against Delores and Gregory Walker, and ordered Corey to pay a civil monetary penalty as well as damages for Ms. Walker's emotional distress. Finding no error, we deny Corey's Petition for Review and grant the Department's Cross-Application for Enforcement of the Secretary's order.

I.

A.

In April 2009, Corey, a landlord with over fifteen years of rental management experience, advertised that a two-bedroom house in Charleston, West Virginia, was available for a monthly rent of $600. When Delores Walker called to inquire about the property, she informed Corey that she would be living with her forty-eight-year-old brother, Gregory Walker, who she said suffered from autism and mental retardation. According to Ms. Walker, Corey responded to this revelation by insisting that she would need to obtain a bond to protect his property as a condition of her potential tenancy. Although this requirement

disturbed her, Ms. Walker nevertheless made an appointment to view the house.

At the viewing, Ms. Walker told Corey that her brother, Mr. Walker, suffered from what she termed "severe autism." J.A. 74. But despite her assurances that Mr. Walker had never been violent or aggressive, Corey expressed reservations about him living in the house and insisted upon meeting Mr. Walker in person. Based on his prior observations of "children with autism . . . flailing their arms and hollering and screaming in outrage," Mr. Walker's "severe" autism raised what Corey would later describe as a "red flag." J.A. 134. Believing that Mr. Walker posed a liability risk, Corey required Ms. Walker, in order to proceed with the application process, to (1) provide a note from Mr. Walker's doctor stating that he would not pose a liability threat, (2) obtain a renter's insurance policy with $1 million in liability coverage, and (3) assume responsibility for any damage Mr. Walker might cause to the property. Corey gave Ms. Walker a handwritten note listing these three conditions. As she was leaving, Corey asked Ms. Walker whether she earned the $2,000 minimum monthly income that he regularly imposed as a prerequisite for renters, and she replied in the affirmative. Ms. Walker took an application but never submitted it because she felt Corey would not have rented to her.

4

About a week after he placed his advertisement, Corey rented the house to Shelley Dearien and her son, neither of whom is disabled. Corey did not require Dearien to purchase liability insurance, did not ask for a doctor's note, and did not require her to meet the monthly minimum income requirement he quoted to Ms. Walker.

According to Ms. Walker, Corey's conduct caused her significant emotional distress for several months and caused her to fear future discrimination against her brother. She also suffered sleeplessness, panic attacks, and difficulty eating and drinking--symptoms later corroborated by the testimony of her friends and sister.

## B.

The Department, on behalf of the Walkers, filed a Charge of Discrimination against Corey, which was heard by an Administrative Law Judge ("ALJ"). The Department alleged that Corey had discriminated against the Walkers based on disability in violation of the FHA by (1) making facially discriminatory statements, in violation of 42 U.S.C. § 3604(c); (2) making housing unavailable because of a disability, in violation of 42 U.S.C. § 3604(f)(1); and (3) imposing discriminatory terms and conditions because of a disability, in violation of 42 U.S.C. § 3604(f)(2). Specifically, the Department alleged that Corey had violated the FHA by requiring Ms. Walker to provide the note

5

from Mr. Walker's doctor, to obtain a renter's insurance policy with $1 million in liability coverage, and to assume responsibility for any damage Mr. Walker might have caused to the property. Corey filed an Answer denying the charges, arguing that he had "an absolute[ly] legitimate basis for refusing to rent to" the Walkers because they failed to establish financial eligibility. J.A. 9-12.

The ALJ, viewing Corey's statements as reasonable requests for information that would determine whether Mr. Walker was a threat, issued an initial decision concluding that Corey had not violated the FHA. The Department petitioned for Secretarial Review. The Secretary reversed the ALJ's decision, determining that the Department had offered evidence sufficient to prove each of the charged violations, and remanded the case for a hearing on damages and the civil penalty.

On remand, the ALJ awarded Ms. Walker $5,000 in emotional distress damages and imposed on Corey an additional $4,000 civil monetary penalty--short of the $16,000 maximum civil penalty. The ALJ also ordered injunctive remedies, directing Corey to provide the Department with certain disability-related information regarding his rental properties and to participate in a fair housing training.

Both the Department and Corey petitioned for Secretarial Review of the ALJ's remand decision: Corey asked the Secretary

6

to reinstate the ALJ's initial decision, while the Department argued that the remand decision minimized both the degree of Ms. Walker's emotional distress and the need for a more significant civil monetary penalty. The Secretary issued a Final Agency Order denying Corey's petition as untimely, granting in part the Department's petition, and imposing a steeper damages award and civil penalty.

Corey filed with this court a timely Petition for Review of the Final Agency Order, and the Department filed a Cross-Application for Enforcement of the order. We consolidated these actions.

II.

Corey contests the Secretary's determination that he violated § 3604(c), (f)(1), and (f)(2) of the FHA, arguing that his conduct was justified under the circumstances.

Pursuant to the Administrative Procedures Act, "federal courts can overturn an administrative agency's decision . . . if it is 'arbitrary, capricious, an abuse of discretion, . . . otherwise not in accordance with the law,' or 'unsupported by substantial evidence.'" Knox v. U.S. Dep't of Labor, 434 F.3d 721, 723 (4th Cir. 2006) (quoting 5 U.S.C. § 706(2)(A), (E)). The substantial evidence standard is a "necessarily . . . limited" appellate review of the agency's

7

factual determinations.  Almy v. Sebelius, 679 F.3d 297, 302 (4th Cir. 2012) (internal quotations omitted).

As a charging party, the Department may prove an FHA violation by showing "that a defendant had a discriminatory intent either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden shifting method known as the McDonnell Douglas test." Kormoczy v. HUD, 53 F.3d 821, 823-24 (7th Cir. 1995) (referring to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  Of course, if the Department provides sufficient direct evidence of discrimination to prove a violation, resort to the McDonnell Douglas method of proof is unnecessary.  Pinchback v. Armistead Homes Corp., 907 F.2d 1447, 1452 (4th Cir. 1990).

A.

Section 3604(c) of the FHA prohibits oral or written statements with respect to the rental of a dwelling that indicate a "preference, limitation, or discrimination" based on certain protected statuses, including disability.  Thus, to establish Corey's liability under § 3604(c), the Department must show that (1) Corey made a statement; (2) the statement was made with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination on the basis of disability.  See White v. HUD, 475 F.3d 898, 904 (7th Cir. 2007).  To determine whether a statement meets the

8

third prong, courts use an "ordinary listener" standard. Id. at 905-06; see United States v. Hunter, 459 F.2d 205, 215 (4th Cir. 1972) (using an "ordinary reader" standard to determine whether advertisements indicated a racial preference in the acceptance of tenants). If an ordinary listener would believe that the statement suggests a preference, limitation, or discrimination based on a protected status, the statement is deemed discriminatory. White, 475 F.3d at 905-06. Evidence of the speaker's motivation for making the discriminatory statement is unnecessary to establish a violation. Jancik v. HUD, 44 F.3d 553, 556 (7th Cir. 1995).

Based on direct evidence, the Secretary determined that Corey had violated § 3604(c). As the Secretary observed, Corey admitted to imposing conditions, both verbally and in writing, on the Walkers' prospective tenancy because of Mr. Walker's disability. Corey also acknowledged that he made these statements based on his assumption that Mr. Walker could pose a threat to neighbors or property due to his disability. The Secretary thus concluded that Corey violated the statute by making statements to Ms. Walker that an ordinary listener would deem reflected a "preference or limitation against [the Walkers'] tenancy because of Mr. Walker's disability." J.A. 281.

9

Corey does not deny telling Ms. Walker that he intended to impose special conditions on the Walkers' prospective tenancy, but disagrees that he violated § 3604(c). He argues that he imposed the conditions only after Ms. Walker's "voluntary and unsolicited statement that her brother suffers from 'severe autism and mental retardation.'" Pet'r's Br. 20. Corey also notes that he never indicated a flat refusal to rent to the Walkers, "only that . . . risk insurance maybe [sic] required." Id. at 21.

Corey's arguments are unavailing. For one, the fact that Ms. Walker disclosed her brother's disability does not excuse Corey's discriminatory responsive statements. Nor does it matter that Corey did not refuse to rent to the Walkers; the statute simply prohibits statements to renters that indicate a limitation based on disability, and Corey admits to making such statements. This ends the inquiry, as substantial evidence supports the Secretary's determination.

B.

In addition to its ban on discriminatory statements, the FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a [disability]." 42 U.S.C. § 3604(f)(1); see United States v. Youritan Constr. Co., 370 F. Supp. 643, 648 (N.D. Cal. 1973) (interpreting "otherwise make

10

unavailable" language to include "[t]he imposition of more burdensome application procedures, of delaying tactics, and of various forms of discouragement by resident managers and rental agents"). Relatedly, landlords are forbidden "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of a [disability]." 42 U.S.C. § 3604(f)(2). However, FHA § 3604(f)(9) contains a limited exception to these prohibitions, allowing a landlord to reject "an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others."

The Secretary concluded that Corey had imposed "written discriminatory conditions upon" the Walkers, in violation of § 3604(f)(1) and (2). J.A. 282. First, the Secretary determined that the Department had proven the statutory violations by direct evidence. This included Corey's testimony that he (1) imposed the conditions because of Mr. Walker's disability, (2) believed "persons diagnosed with autism and mental retardation pose a greater risk in terms of liability," and (3) did not typically impose the challenged conditions on his tenants. Id. Second, the Secretary determined that the Department had proven both violations via indirect evidence under the McDonnell Douglas burden-shifting method. Finally,

11

the Secretary ruled that Corey's conduct could not be excused pursuant to § 3604(f)(9)'s "direct threat" exception, since Corey's reluctance to rent to the Walkers was not sufficiently supported by objective, individualized evidence that Mr. Walker might pose a direct threat.

Corey contests these determinations, but not persuasively. Focusing on perceived flaws in the Secretary's McDonnell Douglas indirect evidence analysis, Corey overlooks the Secretary's direct evidence findings, which alone may sustain the violations. Rather than attempt to account for this evidence, Corey insists that these facts present a "mixed motives" case, and that he would have been justified in ultimately rejecting Ms. Walker's application because her net monthly income--despite her affirmation to the contrary--was below his $2,000 income threshold. Corey also contests the Secretary's refusal to apply the § 3604(f)(9) "direct threat" exception, arguing that his requests for a doctor's note and a meeting with Mr. Walker constituted lawful attempts to obtain objective evidence of whether Mr. Walker posed a direct threat.

These arguments fall flat, and again, substantial evidence supports the Secretary's determinations. First, we agree with the Secretary that direct evidence established both § 3604(f) violations. Corey admitted that he imposed what amounted to discriminatory terms and obligations on his rental negotiations

12

with Ms. Walker based on his fears about Mr. Walker's disability. This admission alone supports the FHA violations: by imposing more burdensome application procedures and generally discouraging the Walkers' application, Corey "otherwise ma[de] [the property] unavailable" to the Walkers because of a disability, in violation of § 3604(f)(1), see Youritan, 370 F.Supp. at 648, and "discriminate[d] against [the Walkers] in the terms, conditions, or privileges" of a rental because of a disability, in violation of § 3604(f)(2). And the fact that Ms. Walker earned less than $2,000 per month does not excuse Corey's conduct. To begin with, Ms. Walker's ability to pay could not possibly have motivated Corey's conduct, as he learned of Ms. Walker's income only after he imposed the discriminatory conditions. In any case, this justification is baldly pretextual, as Corey failed to impose the $2,000 minimum income requirement on the nondisabled applicant to whom he subsequently leased the house.

Second, since the Department established Corey's violations with sufficient direct evidence, we need not address Corey's argument that the Secretary erred in his handling of the McDonnell Douglas indirect evidence inquiry. See Pinchback, 907 F.2d at 1452.

Finally, we affirm the Secretary's conclusion that the § 3604(f)(9) "direct threat" exception does not apply. Corey

13

makes no showing that his discriminatory conduct was supported by any objective evidence that Mr. Walker posed a direct threat to persons or property, as is required to trigger the exception. See H.R. Rep. No. 711, at 30 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2191. And even if Corey's request for a meeting with Mr. Walker and a doctor's note was, as he maintains, an attempt to obtain such objective evidence, Corey cannot justify the other discriminatory conditions he sought to impose, based as they were on unsubstantiated stereotypes about autistic people in general.

III.

For these reasons, we deny Corey's Petition for Review and grant the Department's Cross-Application for Enforcement of the Secretary's order.

PETITION FOR REVIEW DENIED;
CROSS-APPLICATION FOR ENFORCEMENT GRANTED.

14