# United States Court of Appeals
## For the First Circuit

Nos. 09-2497
     09-2589

ASTRALIS CONDOMINIUM ASSOCIATION,

Petitioner, Cross-Respondent,

v.

SECRETARY, UNITED STATES DEPARTMENT OF HOUSING AND

URBAN DEVELOPMENT, ON BEHALF OF CARLOS GARCÍA-GUILLÉN AND SONIA

VÉLEZ-AVILÉS,

Respondent, Cross-Petitioner.

PETITION FOR REVIEW OF AN ORDER OF THE UNITED STATES
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT AND CROSS-PETITION
FOR ENFORCEMENT

Before
Thompson, Selya and Dyk,[*]
Circuit Judges.

José E. De La Cruz Skerrett, Rafael G. Rivera-Rosario, Ricardo
A. Piovanetti Döhnert, and De La Cruz Skerrett Law Office on brief
for petitioner.
Thomas E. Perez, Assistant Attorney General, Dennis J. Dimsey,
and Nathaniel S. Pollock, Attorneys, Appellate Section, Civil
Rights Division, United States Department of Justice, on brief for
respondent.

September 16, 2010

[*]Of the Federal Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  Ours is a society in which people live, work, relax, and shop in apartment complexes, office towers, industrial parks, stadia, and malls that stretch as far as the eye can see.  It is, therefore, unsurprising that a mundane artifact of modern life — the parking space — has become a prized possession.

This case illustrates the point.  The complainants, believing themselves entitled to preferred parking spaces at their residence by reason of their handicaps, filed an administrative claim against the condominium association that controlled those spaces.  A federal administrative law judge (ALJ) awarded the contested spaces (and other relief) to the complainants.  The ALJ's decision became the final order of the Secretary of Housing and Urban Development (HUD).  See 42 U.S.C. § 3612(h)(1).

The condominium association petitioned for judicial review, and the Secretary cross-applied for enforcement of the order.  See id. § 3612(i)(1), (j)(1); see also 28 U.S.C. § 2342(6).  We deny the petition for judicial review and enforce the order.

## I.  BACKGROUND

We briefly rehearse the factual and procedural background.

Carlos García-Guillén and Sonia Vélez-Avilés (the complainants) are husband and wife.  Along with their adult children, they reside in Unit 318 at the Astralis condominium complex in Carolina, Puerto Rico.  They own their unit and two

-2-

parking spaces, which are located approximately 230 feet from the entrance to their unit.

In addition to the parking spaces owned by individual residents, the Astralis Condominium Association (Astralis) maintains a large number of unallocated parking spaces, including ten handicapped spaces. Two of those handicapped spaces are located forty-five feet from the entrance to the complainants' unit. Under the condominium documents, unallocated parking spaces, including handicapped spaces, are regarded as common elements to be used by residents and visitors on a first-come, first-served basis. The handicapped spaces are time-limited; that is, parking in these spaces is permitted only for a certain number of hours before the vehicle must be moved.

The complainants purchased their unit in 2005. From the start, they experienced problems with mobility. García-Guillén suffers from leg and knee pain and has at times needed a walker or other appliance in order to ambulate. In 2007, he underwent hip surgery and continues to use a cane or other aid. Vélez-Avilés suffers from osteoarthritis of the knees, distal neuropathy, and a prolapsed lumbar disc. She is being treated by several physicians.

These impairments make physical activity, including the use of the complainants' assigned parking spaces, difficult. To cope, each complainant obtained a handicapped parking placard from the Commonwealth of Puerto Rico.

The same concerns prompted the complainants, in early 2006, to request that Astralis grant them the exclusive, non-time-limited use of the two handicapped parking spaces most proximate to their unit. They discussed this proposed accommodation at various times with members of Astralis's board of directors (the Board). During these encounters, the complainants proffered medical information, the sufficiency of which is disputed. Astralis claims that the complainants failed to furnish proper documentation of the severity of their alleged disabilities; the complainants vehemently disagree.

The parties struggled to reach an agreement as to the complainants' use of the handicapped parking spaces. They came close on several occasions but never succeeded. During this interval, which lasted into 2007, the complainants occasionally made use of the nearby handicapped parking spaces without regard to the time limits and without authorization from the Board. Because such use violated Astralis's parking policy, security guards cited the complainants for these infractions.

Frustrated by the Board's inaction, the complainants filed an administrative complaint with HUD on February 21, 2007. See 42 U.S.C. § 3610(a); 24 C.F.R. § 103.10. The agency assigned Diana Ortíz to investigate the matter. In an attempt to reach an accord, Ortíz spoke with several Board members and, as a result,

the Board held an extraordinary assembly on March 15, 2007, to address the parking issue.

Ortíz offered to attend the meeting, but the Board declined her offer. The complainants were present. The Board did not ask for, nor did the complainants volunteer, any medical information. The complainants moved that they be granted exclusive use of the two handicapped parking spaces. The Board voted to deny the accommodation.

On September 11, 2008, HUD filed a charge of discrimination against Astralis. An ALJ held a four-day evidentiary hearing, at which the complainants, Ortíz, and several Board members testified. The ALJ issued a written decision on September 10, 2009, in which he found that Astralis had violated the Fair Housing Amendments Act of 1988 (FHAA), Pub. L. No. 100-430, 102 Stat. 1619 (codified as amended at 42 U.S.C. §§ 3601-3619, 3631),[1] by refusing to grant a reasonable accommodation and by unlawfully retaliating against the complainants. The ALJ directed that the complainants receive exclusive use of the two handicapped parking spaces at issue; provided, however, that they agree to surrender their originally assigned spaces. In addition, the ALJ awarded the complainants money damages for the retaliation, assessed a civil penalty against Astralis, and enjoined Astralis

---

[1] The FHAA extended Title VIII of the Civil Rights Act of 1968 to prohibit discrimination because of a person's handicap. See FHAA, 102 Stat. 1619.

and those acting in privity with it from any further interference with the complainants' rights.

The ALJ's order ripened into the final order of the Secretary of HUD.  These timely cross-petitions followed.

## II.  DISCUSSION

We begin our analysis with the standard of review.  We then move to the merits of Astralis's arguments.[2]

### A.  **Standard of Review**.

A court inquiring into an agency's adjudicatory decision can set it aside only if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); see, e.g., S. Shore Hosp., Inc. v. Thompson, 308 F.3d 91, 97 (1st Cir. 2002).  The ALJ's factual findings are binding as long as they are supported by substantial evidence in the record as a whole.  See E.C. Waste, Inc. v. NLRB, 359 F.3d 36, 42 (1st Cir. 2004); see also White v. U.S. Dep't of Hous. & Urban Dev., 475 F.3d 898, 904 (7th Cir. 2007) (explaining that HUD Secretary's final determination of an FHAA claim will be disturbed only if it is "legally or procedurally unsound, or is unsupported by substantial evidence") (internal quotation marks omitted).  Substantial evidence "is more than a mere scintilla.  It means such

---

[2] Astralis makes no developed argumentation with respect to the ALJ's finding of unlawful retaliation and the consequent award of money damages.  Accordingly, there is no need for us to discuss these matters.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In conducting this tamisage, the ALJ's credibility determinations are entitled to great deference. See P. Gioioso & Sons, Inc. v. OSHRC, 115 F.3d 100, 108 (1st Cir. 1997).

## B. **The Merits**.

The FHAA prohibits discriminatory housing practices based on a person's handicap. 42 U.S.C. § 3604(f). The statute defines "handicap" to mean "(1) a physical or mental impairment which substantially limits one or more of [a] person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." Id. § 3602(h). It outlaws discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap" of an individual. Id. § 3604(f)(2). Discrimination includes a "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped persons] equal opportunity to use and enjoy a dwelling." Id. § 3604(f)(3)(B).

There is not much case law under the FHAA in this circuit. Nevertheless, authority under the Americans with Disabilities Act (ADA) 42 U.S.C. §§ 12101-12213, is generally

-7-

persuasive in assessing handicapped discrimination claims under the FHAA. See Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 n.4 (2d Cir. 2003) ("Due to the similarities between the statutes, we interpret them in tandem.").

The FHAA contemplates three types of claims for perceived discrimination: "disparate treatment, disparate impact, and failure to make reasonable accommodations." Smith & Lee Assocs. v. City of Taylor, Mich., 102 F.3d 781, 790 (6th Cir. 1996); accord Tsombanidis, 352 F.3d at 573. The adverse findings in this case were premised on Astralis's failure to make reasonable accommodations.

Astralis argues that our decision in Macone v. Town of Wakefield, 277 F.3d 1 (1st Cir. 2002), requires a finding of either discriminatory intent (disparate treatment) or disparate impact as a predicate to FHAA liability. Astralis's reliance on Macone is mislaid.

Disparate treatment and disparate impact do not comprise the entire universe of pathways to FHAA liability. As the Supreme Court explained, "[d]iscrimination covered by the FHA[A] includes a refusal to make reasonable accommodations." City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 729 (1995) (citing 42 U.S.C. § 3604(f)(3)(B)) (internal quotation marks omitted). Thus, the ALJ correctly deduced that a failure to make reasonable accommodations can pave the way to FHAA liability.

-8-

We move now to the particulars of the claim. To establish a prima facie case of failure to accommodate under the FHAA, a claimant must show that he is handicapped within the purview of 42 U.S.C. § 3602(h) and that the party charged knew or should reasonably have known of his handicap. Dubois v. Ass'n of Apart. Owners of 2987 Kalakaua, 453 F.3d 1175, 1179 (9th Cir. 2006); cf. Higgins v. New Balance Ath. Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999) (enunciating similar prima facie case requirement in claims brought under the ADA). Next the claimant must show that he requested a particular accommodation that is both reasonable and necessary to allow him an equal opportunity to use and enjoy the housing in question. Bryant Woods Inn, Inc. v. Howard Cnty., Md., 124 F.3d 597, 603 (4th Cir. 1997); cf. Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001) ("[T]he ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request' from the employee.") (citation omitted). Finally, the claimant must show that the party charged refused to make the requested accommodation. 42 U.S.C. § 3604(f)(3)(B); Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 336 (2d Cir. 1995).

The record in this case provides substantial evidence to support the ALJ's serial findings that the complainants were handicapped; that Astralis knew of their handicaps; that the complainants requested a reasonable accommodation (exclusive use of

-9-

the two handicapped parking spaces); and that Astralis refused to honor their request.

Astralis mounts a no-holds-barred defense, disputing these findings at every turn. On the first element, it asserts that the complainants are not handicapped within the meaning of the FHAA and that, in any event, it (Astralis) had no knowledge of their handicaps. These denials do not withstand even the most cursory scrutiny.

Testimony by the complainants, the HUD investigator, and Board members makes manifest that García-Guillén had significant mobility problems stemming from hip, knee, and leg ailments. These conditions made the walk to and from his car difficult. The testimony painted much the same picture as to Vélez-Avilés. The evidence of her mobility problems showed that she walked with great difficulty and pain, resorting to using a cane or even a shopping cart for support, and that locomotion around the common areas of the condominium exhausted her.

In addition, the fact that the Commonwealth had issued handicapped parking placards to both the complainants lends support to the anecdotal evidence. Under Puerto Rico law, such placards may be issued only for the benefit of persons with disabilities. See P.R. Laws Ann. tit. 9, § 5022(c).

Relatedly, the record offers ample support for the ALJ's finding that Astralis knew or reasonably should have known of the

complainants' handicaps. The complainants' difficulties in ambulating were visible to the naked eye. Moreover, on several occasions the complainants presented pertinent medical information to members of the Board, thus documenting their conditions. In fact, former presidents of the Board, although apparently acting ultra vires, attempted to grant a parking space accommodation to the complainants. Against this mise-en-scène, Astralis's protest that it was unaware of the complainants' physical handicaps rings hollow.

As to the second element of the prima facie case, Astralis offers no coherent counter-argument. It cannot be gainsaid that the complainants, long and loudly, requested a parking space accommodation. Moreover, we think it plain that, on this record, a rational person could logically infer (and, thus, plausibly find) that the requested accommodation was both reasonable and necessary to allow the complainants equal use and enjoyment of their residence. See Jankowski Lee & Assocs. v. Cisneros, 91 F.3d 891, 895 (7th Cir. 1996) (upholding ALJ's finding of FHAA violation where landlord was aware of individual's mobility handicap yet denied request for a parking space accommodation); see also 24 C.F.R. § 100.204(b) (illustrating reasonable accommodation by citing example of a person with a mobility impairment who requests a closer parking space).

Indeed, an example in the HUD guidelines mirrors this case:

> A resident with a mobility impairment . . . requests an assigned accessible parking space close to the entrance to her unit as a reasonable accommodation. There are available parking spaces near the entrance to her unit that are accessible, but those spaces are available to all residents on a first come, first served basis. The provider must make an exception to its policy of not providing assigned parking spaces to accommodate this resident.

Joint Statement of Dep't of Hous. & Urban Dev. & Dep't of Justice, Reasonable Accommodations Under the Fair Housing Act 6 (May 17, 2004) [hereinafter Joint HUD/DOJ Statement].

Finally, we scrutinize the last element of the complainants' prima facie case. Astralis tries to undermine the ALJ's finding that it denied the accommodation by insisting that the complainants obstructed the grant of the accommodation. This came about, Astralis says, because the complainants failed to participate in an interactive process.[3] The ALJ's rejection of this claim is supported by substantial evidence in the record.

The ALJ found that the complainants had been requesting a parking space accommodation for at least a year prior to the

---

[3] The HUD guidelines contemplate that parties may engage in an "interactive process" to discuss the need for the accommodation and possible alternatives if the housing provider refuses to grant a requested accommodation on the ground that it is not reasonable. Joint HUD/DOJ Statement, at 7; see, e.g., Huberty v. Wash. Cnty. Hous. & Redev. Auth., 374 F. Supp. 2d 768, 775 (D. Minn. 2005).

-12-

commencement of the HUD investigation. Although Board representatives had at times offered to grant the accommodation, it never materialized. Astralis's suggestion that the complainants, who pursued their request assiduously, needed to bring the matter for a full vote of the condominium owners elevates hope over reason. Among other things, the suggestion overlooks testimony, credited by the ALJ, that such a vote was predestined to fail. The complainants had no obligation to undertake a futile act in order to vindicate their federally guaranteed rights.

In sum, the circumstances permit a reasonable inference that Astralis effectively short-circuited the interactive process. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (finding an actionable refusal to grant accommodation where, as here, a factfinder could supportably conclude that "defendants simply stonewalled").

Astralis also complains that it should not be held responsible because it never expressly refused to accommodate the complainants. In voicing this plaint, Astralis mistakenly relies on Dubois. Unlike in this case, the condominium association in Dubois granted a temporary exemption pending an inquiry into the accommodation request. 453 F.3d at 1178. That exemption — a reasonable accommodation for the perceived medical necessity — was in place when the administrative claim was instituted, and the condominium association "thus never refused to make the requested

-13-

accommodation." Id. at 1179. That is a far cry from the instant case, in which Astralis never granted the complainants permission to park in the handicapped spaces nearest to their unit. In fact, when the complainants unilaterally parked in those spaces, they received violation notices. Dubois is, therefore, readily distinguishable.

In a last-ditch effort to snatch victory from the jaws of defeat, Astralis argues that portions of Puerto Rico's condominium law, P.R. Laws Ann. tit. 31, §§ 1291i to 1291l-1, legitimize its actions. To the extent that Astralis claims that it could not be guilty of intentional discrimination because its actions were in seeming compliance with that law, its argument is a red herring. The ALJ never found intentional discrimination to be a basis for Astralis's liability under the FHAA.

In a variation on this theme, Astralis claims that the ALJ's order cannot stand because local law contains explicit prerequisites for the transfer of common elements in condominium developments, which have not been satisfied here. This amounts to a claim that the FHAA cannot trump local law because it does not evince a congressional intent to preempt or displace local law, such as the Puerto Rico condominium law, regarding the transfer of common elements. We reject this argument not only because it turns the Supremacy Clause, U.S. Const. art. VI, § 2, on its head, but also because there is no meaningful conflict between the FHAA and

-14-

Puerto Rico's condominium law. As the ALJ recognized, compliance with both the FHAA and the condominium law is possible. We explain.

Under Puerto Rico condominium law, the transfer of common elements after the construction of a property requires the unanimous consent of the condominium owners. P.R. Laws Ann. tit. 31, § 1291i(b)(4). Even though this provision conceivably could be construed to preclude compliance with the Secretary's order — after all, there has been no affirmative vote of all the condominium owners — Astralis is duty bound not to enforce a statutory provision if doing so would either cause or perpetrate unlawful discrimination. Cf. Gittleman v. Woodhaven Condo. Ass'n, 972 F. Supp. 894, 899 (D.N.J. 1997) (enunciating similar prohibition with regard to a discriminatory master deed provision). In other words, to the extent that state statutes or local ordinances would undercut the FHAA's anti-discrimination provision, the former cannot be enforced. See Trovato v. City of Manchester, N.H., 992 F. Supp. 493, 498, 499 (D.N.H. 1997) (finding FHAA violation and enjoining enforcement of a conflicting zoning code provision). Thus, Astralis must regulate the use of common elements in compliance with the FHAA's anti-discrimination policies, regardless of local law.

This conclusion is buttressed by two additional considerations. First, contrary to Astralis's importunings, the

language of the FHAA itself manifests a clear congressional intent to vitiate the application of any state law that would permit discrimination based on physical handicap. See 42 U.S.C. § 3615 (expressly commanding that "any law of a State . . . that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid") (emphasis supplied). Second, adopting Astralis's view would create a sinkhole that would swallow the general rule and cripple the effectiveness of the FHAA. To say that private agreements under a state's condominium statute are capable of trumping federal anti-discrimination law verges on the ridiculous. We disavow that proposition. See, e.g., Shelley v. Kraemer, 334 U.S. 1, 11 (1948) ("It is . . . clear that restrictions on [housing] of the sort sought to be created by the private agreements in these cases could not be squared with the requirements of the Fourteenth Amendment if imposed by state statute or local ordinance.").

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we deny Astralis's petition for judicial review and grant HUD's cross-application for enforcement of the Secretary's final order.


**So Ordered**.


-16-