# United States Court of Appeals
## For the First Circuit

No. 14-2139

CASTILLO CONDOMINIUM ASSOCIATION,

Petitioner,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
OFFICE OF THE SECRETARY, ON BEHALF OF CARLO GIMÉNEZ BIANCO,

Respondent.

PETITION FOR REVIEW OF A FINAL ORDER OF THE
SECRETARY OF THE UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT

No. 15-1223

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
OFFICE OF THE SECRETARY, ON BEHALF OF CARLO GIMÉNEZ BIANCO,

Petitioner,

v.

CASTILLO CONDOMINIUM ASSOCIATION,

Respondent.

CROSS-PETITION FOR ENFORCEMENT OF A FINAL ORDER OF THE
SECRETARY OF THE UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT

Before

Howard, <u>Chief Judge</u>,
Torruella and Selya, <u>Circuit Judges</u>.

———————————

<u>Sigfredo A. Irizarry-Semidei</u> for Castillo Condominium Association.

<u>Christopher Chen-Hsin Wang</u>, Attorney, United States Department of Justice, Civil Rights Division, with whom <u>Vanita Gupta</u>, Principal Deputy Assistant Attorney General, and <u>Sharon M. McGowan</u>, Attorney, were on brief, for Secretary of the United States Department of Housing and Urban Development.

———————————

May 2, 2016

———————————

**SELYA**, **Circuit Judge**. This case involves a man, his dog, and a condominium association's "no pets" rule. Like so many cases, it turns chiefly on the standard of review. After delineating that standard (a matter of first impression in this circuit), inspecting the record through that lens, and applying the applicable law, we deny the condominium association's petition for judicial review of a final order of the Secretary of the United States Department of Housing and Urban Development (HUD). We simultaneously grant the Secretary's cross-petition for enforcement of his order.

## I. THE STATUTORY SCHEME

This case rests on a statutory foundation: the Fair Housing Act (the Act), 42 U.S.C. §§ 3601-3619. As relevant here, the Act proscribes discrimination in housing and housing-related matters based on a person's disability.[1] See id. § 3604(f). Under the Act, a cognizable disability is "(1) a physical or mental impairment which substantially limits one or more of [a] person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." Id. § 3602(h).

---

[1] Although the Act uses the term "[h]andicap" rather than "disability," see 42 U.S.C. § 3602(h), we follow the parties' lead and employ the term "disability" throughout.

Pertinently, the Act outlaws discrimination in connection with the terms, conditions, or privileges of housing. See id. § 3604(f)(2). Discrimination includes, among other things, the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." Id. § 3604(f)(3)(B).

## II. PRIOR PROCEEDINGS

In 2010, the Castillo Condominium Association (the Association) learned that Carlo Giménez Bianco (Giménez), a condominium resident, was keeping a dog on the premises and warned him by letter that it would fine him unless he removed the dog from his unit. In response, Giménez, an individual who suffers from anxiety and depression, promptly advised the board of directors, in writing, that he planned to keep his emotional support dog in his condominium unit and that he was entitled to do so under federal law. Although Giménez accompanied this letter with a note from his treating psychiatrist, the Association did not relax its "no pets" bylaw. As a result of the conflict (as the Secretary found), Giménez was eventually forced to vacate and sell the unit that had been his home for some 15 years.

Giménez lodged a complaint of disability discrimination with HUD. Following an investigation and an agency determination of reasonable cause, HUD filed a charge of discrimination against

the Association.[2]  See id. § 3610(a)(1)(B)(iv), (g)(1)-(2).  The charge alleged that the Association had unlawfully discriminated against Giménez, a disabled person, by denying him a reasonable accommodation and thus making housing unavailable to him.  See id. § 3604(f)(1), (f)(2), and (f)(3)(B).

A four-day evidentiary hearing ensued before an administrative law judge (ALJ).  Giménez, his treating psychiatrist (Dr. Pedro Fernández), and his primary-care physician (Dr. Roberto Unda Gómez) all testified that Giménez suffered from a disability — an anxiety disorder and chronic depression — and that his symptoms were ameliorated by the presence of an emotional support dog.  The Association presented both lay and expert evidence in opposition.  On July 17, 2014, the ALJ issued a recommended decision concluding that the Association had not violated the Act because Giménez had failed to prove by a preponderance of the evidence that he had a mental impairment warranting a reasonable accommodation in the form of a companion animal.

Under the regulatory regime, the ALJ's recommended decision could be appealed to the Secretary.  See id. § 3612(h).

---

[2] The charge originally named Carlos Toro Vizcarrondo, the president of the Association's board of directors, as a co-respondent.  Because the Association is the only party against which relief has been ordered, we treat the matter as if the Association has been the sole respondent all along.

That happened here. On further review, the Secretary set aside the ALJ's recommended decision. The Secretary explained that the ALJ had erred both in discounting Giménez's testimony about his lengthy history of anxiety and depression and in declining to credit the testimony of Dr. Fernández and Dr. Unda. In the end, the Secretary found that Giménez suffered from a cognizable disability, that the Association knew or should have known that Giménez had such a disability, that Giménez had informed the Association of his need for a reasonable accommodation in the form of an emotional support dog, that the Association had improvidently denied the accommodation, and that the Association had failed to engage in the required interactive process.[3]

Having found the Association liable for discrimination, the Secretary remanded the case to the ALJ for an initial determination of damages and civil penalties. See id. § 3612(g)(3); 24 C.F.R. § 180.675(a), (b)(3). In due course, the ALJ issued another recommended decision; this decision proposed to award Giménez $3,000 in emotional distress damages and to assess a $2,000 civil penalty against the Association. The ALJ noted,

---

[3] The HUD guidelines contemplate that parties will engage in an interactive process to discuss the need for a requested accommodation and possible alternatives when the housing provider refuses to grant that accommodation on the ground that it is not reasonable. See, e.g., Astralis Condo. Ass'n v. Sec'y of HUD, 620 F.3d 62, 68 & n.3 (1st Cir. 2010); Jankowski Lee & Assocs. v. Cisneros, 91 F.3d 891, 895 (7th Cir. 1996).

- 6 -

inter alia, that since the Association's culpable acts and omissions apparently "were fueled by ignorance of the law," those acts and omissions did not amount to "willful, malicious conduct that demands a maximum penalty." Additionally, the ALJ recommended ancillary relief, including fair housing training for the Association's officers and the implementation by the Association of a reasonable accommodation policy.

This second recommended decision met the same fate as the first: it inspired another petition for Secretarial review. The Secretary concluded that the ALJ had undervalued the emotional distress that Giménez had experienced and, therefore, increased the proposed award of emotional distress damages to $20,000. Similarly, the Secretary concluded that the ALJ had underestimated the Association's blameworthiness for its "egregious and intentional" conduct. Unlike the ALJ, the Secretary counted the Association's ignorance of the law as an aggravating factor, not a mitigating factor, and upped the civil penalty to $16,000 (the maximum available penalty amount). Finally, the Secretary reworked and strengthened the ALJ's proposals for ancillary relief.

Displeased by virtually every aspect of the Secretary's final order, the Association filed a timely petition for judicial review. See 42 U.S.C. § 3612(i)(1). The Secretary countered by

cross-petitioning for enforcement of his order.  We consolidated these petitions for briefing and oral argument.

## III.  STANDARD OF REVIEW

Under the Administrative Procedure Act (APA), a reviewing court may set aside a final agency order if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  In line with this statutory imperative, a reviewing court is bound by an agency's factual findings "as long as they are supported by substantial evidence in the record as a whole."  Astralis Condo. Ass'n v. Sec'y of HUD, 620 F.3d 62, 66 (1st Cir. 2010).

"Substantial evidence 'is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)).  Of course, substantial evidence does not mean either uncontradicted evidence or overwhelming evidence.  Rather, this benchmark may be met "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); see also Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.").

This familiar standard has a twist, however, in cases in which the hearing officer and the ultimate decisionmaker have differing views of the material facts. This case is emblematic of such a situation: though the ALJ was the initial decisionmaker and the one who actually saw and heard the witnesses, the Secretary is the ultimate decisionmaker. As such, the Secretary is empowered to "affirm, modify or set aside, in whole or in part, the initial decision, or remand the initial decision for further proceedings." 24 C.F.R. § 180.675(a); see 42 U.S.C. § 3612(h), 24 C.F.R. § 180.675(b). But common sense suggests that, in such circumstances, some weight should be given to the ALJ's factual findings.

Although this court has not had occasion to speak to the ramifications of such a paradigm, the case law elsewhere indicates that a more granular level of scrutiny should apply. We agree that such a nuanced approach is desirable — and we adopt it.

We hold that where, as here, the Secretary rejects the factual findings of an ALJ, a reviewing court must first make certain that the Secretary has adequately articulated his reasons for overturning the ALJ's findings. See Aylett v. Sec'y of HUD, 54 F.3d 1560, 1561, 1567 (10th Cir. 1995). The court must then proceed to ask whether those articulated reasons derive adequate support from the administrative record. See id. at 1561. Although this heightened level of scrutiny does not alter the substantial

evidence standard of review in any fundamental respect, it requires us to apply that standard with special rigor, particularly with regard to credibility determinations. See Garcia v. Sec'y of Labor, 10 F.3d 276, 280 (5th Cir. 1993); see also Earle Indus., Inc. v. NLRB, 75 F.3d 400, 404 (8th Cir. 1996) (noting that a reviewing court "examine[s] the [Secretary's] findings more critically" when the Secretary and ALJ disagree). It is with this nuanced standard of review in mind that we turn to the Association's asseverational array.

## IV. DISCUSSION

We divide our analysis into three segments. First, we confront the Association's claims that the Secretary's final order is not supported by substantial evidence in the record. Second, we explore the Association's assertion that the charging party's complaint is barred by res judicata. Third, we address the Association's plaint that the Secretary's final order is tainted by procedural error.[4]

### A. The Merits.

This case is fact-intensive, and it would serve no useful purpose for us to chronicle every piece of evidence. For present purposes, it suffices to say that we have examined the record with

---

[4] We note that the Association has advanced a host of other contentions (including contentions as to the amount of damages and the size of the penalty imposed). Having examined all of these contentions, we reject them out of hand.

care and have given especially exacting scrutiny to the issue of disability (the principal issue on which the Secretary and the ALJ diverged).

The Secretary's decision ultimately rests on his determination that the Association violated the Act. Though the proof is conflicted at several points, we conclude that substantial evidence supports the Secretary's finding that the Association's refusal to allow Giménez to keep an emotional support dog in his condominium unit as a reasonable accommodation for his disability was unlawful. That refusal made Giménez's home unavailable to him as a practical matter and, thus, violated the Act. See 42 U.S.C. § 3604(f)(1). So, too, we conclude that substantial evidence supports the Secretary's finding that the Association's failure to provide a reasonable accommodation constituted discrimination against Giménez in the terms and conditions of housing due to his disability and, thus, violated yet another provision of the Act. See id. § 3604(f)(2). We explain briefly.

To make out a prima facie case for failure to provide a reasonable accommodation, the charging party (here, Giménez) had to show that he was a person with a disability, that the Association knew or should have known that he was a person with a disability, that his emotional support dog was reasonable and necessary to afford him an equal opportunity to use and enjoy his dwelling, and that the Association nonetheless refused to provide

a reasonable accommodation. See Astralis Condo. Ass'n, 620 F.3d at 67. Here, ample evidence demonstrates these four key showings. First, Giménez's own testimony, substantiated by the testimony of Dr. Fernández and Dr. Unda, warranted a finding that Giménez, who suffered from anxiety and chronic depression, was a person with a disability within the purview of the Act. Second, the evidence is virtually incontrovertible that the Association knew (or at least had notice) that Giménez suffered from a disability. Third, substantial evidence supports a finding that Giménez told the Association that he would need a reasonable accommodation (an exception to the "no pets" bylaw so that he could keep a dog in his condominium unit) in order to allow him an equal opportunity to use and enjoy his abode. Fourth, the record makes manifest that the Association informed Giménez that he could not keep his dog in his unit. No more was exigible: based on these supportable findings, the Secretary acted well within the scope of his authority both in concluding that the Association's refusal to grant an accommodation made Giménez's home unavailable to him (thus, compelling him to move out in order to keep his emotional support dog) and in concluding that these actions constituted unlawful discrimination.[5]

---

[5] The Association makes much of the undisputed fact that, when forced to leave the condominium, Giménez sold his unit at a considerable profit. But this circumstance does not excuse the Association's failure to comply with the Act.

To be sure, the Secretary reached these conclusions only after rejecting the ALJ's central factual finding: that Giménez did not suffer from a disability. But the Secretary did not reject that finding lightly. To the contrary, he gave specific and plausible reasons for declining to follow the ALJ — reasons that find adequate purchase in the record. See Aylett, 54 F.3d at 1561, 1567.

In setting aside the ALJ's finding that Giménez did not suffer from a disability, the Secretary noted that the ALJ had discounted the testimony of Giménez, his treating psychiatrist (Dr. Fernández), and his primary-care physician (Dr. Unda). The Secretary concluded that the ALJ lacked any sound basis for the wholesale abrogation of this testimony.

To begin, the ALJ discounted Giménez's own testimony, apparently because he concluded that an individual cannot supply key testimony verifying his own disability status. Yet, our research suggests the opposite. See U.S. Dep't of Justice & U.S. Dep't of Hous. & Urban Dev., Reasonable Accommodations Under the Fair Housing Act, at 13 (May 17, 2004);[6] see also Olsen v. Stark

---

[6] We agree with the Eleventh Circuit that even "[t]hough the Joint Statement is a policy statement, rather than an authoritative interpretation of FHA and therefore does 'not warrant Chevron-style deference,' it is nonetheless 'entitled to respect' to the extent it has the 'power to persuade.'" Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277, 1286 n.3 (11th Cir.

- 13 -

<u>Homes, Inc.</u>, 759 F.3d 140, 148, 157 (2d Cir. 2014) (explaining that individual's testimony about his depression was competent to put his disability status in issue).

Next, the Secretary disagreed with the ALJ's assessment of Dr. Fernández's testimony. Dr. Fernández is a practicing psychiatrist who had treated Giménez for years and who strongly confirmed the existence of the claimed disability. The ALJ seems to have given no weight to the doctor's testimony for two primary reasons: first, the ALJ cited the personal friendship between Giménez and Dr. Fernández; and second, the ALJ was skeptical of the fact that Dr. Fernández had not charged Giménez for treatment. But the Secretary gave cogent reasons for disagreeing with the ALJ's assessment. As for the friendship between Giménez and Dr. Fernández, the Secretary explained that HUD and DOJ have made pellucid that verification of a person's disability can come from any reliable third party who is in a position to know about the individual's disability — a category into which Dr. Fernández surely fit. <u>See</u> U.S. Dep't of Justice & U.S. Dep't of Hous. & Urban Dev., Reasonable Accommodations Under the Fair Housing Act, at 13-14 (May 17, 2004). The Secretary also explained that ignoring a doctor's testimony simply because he treated a patient pro bono would lead to the nonsensical conclusion that a physician

---

2014) (internal citation omitted) (quoting <u>Christensen</u> v. <u>Harris County</u>, 529 U.S. 576, 587 (2000)).

who does not charge for his services could never testify.  Carried to its logical extreme, the ALJ's view might even mean that a person who receives all of his medical treatment for free could never establish a disability.  In the end, it is the overall quality of the proffered testimony that determines its probative value.  Recognizing as much, the Secretary warrantably found that Dr. Fernández's testimony was probative of Giménez's disability.

Finally, the Secretary credited the testimony of Dr. Unda — a witness whom the ALJ had disregarded altogether.  Dr. Unda's testimony confirmed both Giménez's autobiographical account of his struggles with anxiety and depression and Dr. Fernández's diagnosis.  That Dr. Unda is not himself a psychiatrist does not, as the ALJ intimated, preclude reliance on his testimony about his patient's mental state.  See, e.g., Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); Alvarado v. Weinberger, 511 F.2d 1046, 1049 (1st Cir. 1975) (per curiam).

Based on his evaluation of the testimony, the Secretary concluded that Giménez had what amounted to a lifelong history of depression.  Each of the physicians had treated Giménez for years, and each doctor's opinion corroborated both Giménez's account of his mental impairment and the other doctor's opinions.  The Secretary was well within his purview to credit this testimony fully and to make the ultimate determination that Giménez was disabled, that is, that Giménez suffered from a mental impairment

that substantially limited one or more of his major life activities. Even under the heightened scrutiny demanded by the applicable standard of review, the Secretary's decision passes muster because the record, viewed critically, clearly supports his position.

To say more on this point would be supererogatory. We hold both that the Secretary adequately articulated his reasons for scrapping the ALJ's "no disability" finding and that his conclusion that the Association had violated the Act is supported by substantial evidence in the record as a whole.[7]

## B. Res Judicata.

The Association argues that, regardless of the merits, the charge against it ought to have been dismissed on the ground of res judicata. Some additional background is helpful in order to put this argument in perspective.

Prior to filing his complaint with HUD, Giménez protested the "no pets" bylaw to the Puerto Rico Department of Consumer Affairs (familiarly known by its Spanish acronym, DACO). That protest went nowhere: DACO upheld the Association's right to include a "no pets" provision in its bylaws and to enforce such a

_____

[7] In fashioning his final order, the Secretary also rejected the ALJ's conclusions as to the appropriate size of the damages award and the penalty amount. But these were judgment calls, well within the Secretary's ken; and we find his revised awards to be adequately supported by substantial evidence in the record.

provision.  The Association says that DACO's dismissal of the plaintiff's complaint should be given preclusive effect.  Both the ALJ and the Secretary disagreed.  So do we.

In Puerto Rico, the doctrine of res judicata is codified by statute.  Under that statute, "it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." P.R. Laws Ann. tit. 31, § 3343.  This definition encompasses, inter alia, the doctrine of claim preclusion.  See Medina-Padilla v. U.S. Aviation Underwriters, Inc., 815 F.3d 83, 86 (1st Cir. 2016); R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 183 (1st Cir. 2006).

"A party asserting claim preclusion under Puerto Rico law must establish that: (i) there exists a prior judgment on the merits that is 'final and unappealable'; (ii) the prior and current actions share a perfect identity of both 'thing' and 'cause'; and (iii) the prior and current actions share a perfect identity of the parties and the capacities in which they acted." García-Monagas v. De Arellano, 674 F.3d 45, 51 (1st Cir. 2012).  The

second of those elements is not satisfied here[8] and, accordingly, res judicata does not apply.

The Puerto Rico Condominium Act sets out an administrative process, available to DACO, that is confined to the promulgation of condominium rules and enforcement of those rules. See P.R. Laws Ann. tit. 31, § 1293f. The Condominium Act does not in any way address (or give DACO the power to address) housing discrimination. Nor does any other part of DACO's organic statute authorize the exercise of such authority. Consistent with this limited grant of authority, DACO determined in this instance only that the Association had adhered to proper drafting and voting protocols in adopting the "no pets" bylaw and, therefore, the bylaw was valid and binding on all owners. It follows inexorably that the DACO proceeding and the HUD proceeding do not — and, indeed, could not — share a perfect identity of both thing and cause. Thus, the ALJ did not err in refusing to apply res judicata to pretermit Giménez's HUD charge.

### C. **Motion in Limine.**

The Association also challenges a pretrial ruling of the ALJ (implicitly upheld by the Secretary). This ruling denied the Association's motion to exclude the expert testimony and written

---

[8] It is not necessary for us to consider whether the first and third elements are satisfied, and we take no view of those questions.

- 18 -

report of Giménez's treating psychiatrist, Dr. Fernández.  This challenge is futile.

To begin, the Association has waived this challenge by failing to develop it in this court.  Before us, the Association merely mentioned the argument in the most skeletal terms.  This constituted a waiver: it is a "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Nor does the Association's bare reference to pages in the appendix cure this omission.  A party cannot force an appellate court to rummage through papers filed below in order to ascertain the structure and substance of that party's arguments.  See Giragosian v. Bettencourt, 614 F.3d 25, 30 (1st Cir. 2010) (deeming impuissant party's attempt to rely on arguments made only in district court filings).

In all events, the Association's claim has little force. Dr. Fernández's expert testimony rests on a solid foundation: he is a practicing psychiatrist who has treated Giménez since 1997. Furthermore, his testimony is highly relevant: it goes directly to the pivotal issues in the proceeding (Giménez's claimed disability and his need for an emotional support dog).  An agency has wide discretion in determining what individuals are competent to testify as experts in an administrative proceeding and what expert

opinion testimony is admissible in such a proceeding.  See SeaWorld
of Fla., LLC v. Perez, 748 F.3d 1202, 1214 (D.C. Cir. 2014); cf.
Diefenbach v. Sheridan Transp., 229 F.3d 27, 30 (1st Cir. 2000)
(discussing trial judge's broad discretionary power in determining
admissibility of expert testimony).  The record in this case,
fairly read, offers no reason to think that this wide discretion
was somehow exceeded.

## V.  CONCLUSION

We need go no further.[9]  For the reasons elucidated
above, we deny the Association's petition for review and grant the
Secretary's cross-petition for enforcement of his order.  Costs
shall be taxed in favor of the Secretary.


**So Ordered.**

---

[9] On November 12, 2014, HUD issued a press release touting the
Secretary's final order in this case.  The Association calls this
press release to our attention, see Fed. R. App. 28(j), and
attaches sinister implications to it.  But we think it unremarkable
that an agency may seek to deter future acts of discrimination by
publicizing its success in charging and penalizing past violators.