Filed 5/4/23  Fairly-Haze v. Whitesails Community Association CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| SUZAN FAIRLY-HAZE et al.,<br><br>  Plaintiffs and Appellants,<br><br>v.<br><br>WHITESAILS COMMUNITY ASSOCIATION,<br><br>  Defendant and Respondent. | 2d Civ. No. B311574<br>(Super. Ct. No. 56-2019-00527637-CU-PA-VTA)<br>(Ventura County) |

Suzan Fairly-Haze and Robert Haze (collectively "Petitioners") own a residential condominium (Unit 112) within the Whitesails Community Association (the Association) in the City of Oxnard.  In 2016, a dispute arose between Petitioners and the Association regarding the installation of a pressure reducing valve above one of Petitioners' two assigned parking spaces (Nos. 33 and 34) in the Association's underground parking garage.  At

about the same time, Robert[1] requested a dedicated handicapped accessible parking space in the underground garage. The parties agreed to submit these issues to private, binding arbitration.

The arbitrator ruled primarily in the Association's favor. Pertinent here is the arbitrator's finding (1) that Robert is entitled to an assigned handicapped accessible space in the *outside* parking area, closest to the underground parking garage, (2) provided Petitioners agree to surrender one of their two parking spaces in the garage.

Petitioners filed a petition to vacate and/or correct the arbitrator's rulings. The trial court denied the petition, confirmed the arbitrator's Final Award and granted the Association's motion for attorney fees. Petitioners challenge the judgment and fee award. We affirm in all respects.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Parking Dispute*

The Association is a nonprofit mutual benefit corporation governed by a Declaration of Covenants, Conditions & Restrictions (Declaration or CC&Rs). The Declaration is an equitable servitude that runs with the land and is a contract between the Association and the condominium owners. The original Declarant was the property's developer. After selling the condominiums to individual owners, the Declarant transferred its management responsibilities to the Association. As condominium owners, Petitioners are members of the Association and are bound by the CC&Rs and other governing documents.

Ownership of each condominium includes two dedicated parking spaces in the Association's underground parking garage. These spaces are deeded to the owners when they purchase a unit

---

[1] To avoid confusion, we refer to Robert Haze by his first name. No disrespect is intended.

2

and are not owned by the Association. Accordingly, when Petitioners purchased their condominium, they assumed ownership of two assigned underground parking spaces. The only parking spaces in the garage are those assigned to individual units.

Petitioners complained when the Association installed a pressure reducing valve on a plumbing line above one of their underground parking spaces. They informed the Association of Robert's physical disability and advised that the valve's installation prevented him from using either parking space.

On August 30, 2016, Petitioners' attorney sent a letter advising the Association "that there are no handicapped parking spaces located in the garage of [the building], as is required by law, and that Robert is entitled to a reasonable accommodation from the Association with respect to his parking." The attorney "requested that the Association provide Robert one permanent reserved handicapped space for his exclusive use near the elevator in the underground garage, or, if that is not possible because all of the spaces are deeded, then outside as close as possible to the underground garage."

Because all underground parking spaces are indeed owned by the individual homeowners, the Association responded that it could not assign another underground space to Petitioners. The Association acknowledged the garage originally had a handicapped accessible parking space, as required by section 1109.A.4 of the Building Code, but produced evidence that the Declarant developer painted over the handicapped sign and deeded the space to a non-disabled homeowner.

Adjacent to Petitioners' building is a paved outdoor public parking area containing 149 spaces. Fifty-nine of those spaces,

3

including four handicapped spaces, are available for outside residential parking.

## B. Initial Arbitration Award

The parties selected the Honorable Alan S. Penkower, Ret., as the arbitrator. Petitioners' "Demand for Arbitration" summarized their claims against the Association as follows: "(a) breach of the Association's CC&Rs and violation of associated law; (b) breach of fiduciary duty; (c) nuisance; (d) trespass; (e) negligence; and [(f)] failure to make a reasonable accommodation for Robert." The relief requested included "the provision of a permanent handicapped parking space for the exclusive use of Robert, as a reasonable accommodation, either in the underground garage near the elevator, or outside as close as possible to the underground garage."

After hearing evidence and argument, the arbitrator issued a 45-page Initial Award. The arbitrator rejected Petitioners' claims regarding the installation of the pressure reducing valve. He further found the Association "is not in violation of Section 1118.A.l of the . . . Building Code or Section 6.1.7 of the CC&Rs, and is not empowered, or required, under Section 6.1.7, to order an exchange of assigned parking spaces in the garage."

## C. Final Arbitration Award

Petitioners moved for correction of the arbitrator's Initial Award. In his Final Award, the arbitrator amended the Initial Award as follows: "[The Association's] counsel shall supply a copy of the Award and this Ruling to the retained architect. In assessing feasibility, the architect shall analyze the current configuration of the garage, including the fact that all existing parking spaces are, by reference to the CC&Rs, 'deeded' as exclusive uses to individual residential units. The architect shall determine whether it is possible to physically enlarge and/or

4

reconfigure the garage to safely provide an additional exclusive accessible parking space therein, and, if so, to discuss the cost and regulatory ramifications thereof.  The architect shall prepare a report with his/her analysis and findings . . . ."

Ultimately, the architect determined the underground parking garage could not be safely enlarged or modified to allow for a handicapped accessible space.  On that point, the Final Award provided:  "In the event that it is determined that it is not feasible to provide an additional accessible parking space in the garage, the alternative space in the outdoor Public Parking Area as close as possible to the garage shall be provided by [the Association] in a location selected by [Petitioners].  Such parking space shall be appropriately marked as a handicapped space for the exclusive use of Robert Haze.  If [Petitioners] select an existing standard parking space, then that space must be reconfigured as an accessible parking space.  If [Petitioners] select an existing designated handicapped space, one of the other standard parking spaces in the outdoor parking area should be converted to a handicapped space to comply with the 5% requirement under the . . . Building Code."

Lastly, the arbitrator ruled that "[t]he providing of an accessible space for the exclusive use of Robert Haze is conditioned upon [Petitioners] surrendering to [the Association] one of their originally assigned parking spaces."

*D.  Trial Court's Confirmation of*
*Final Arbitration Award*

Petitioners claimed the arbitrator's awards were contrary to public policy and violated their unwaivable statutory rights under the Building Code and the Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq.  Specifically, they sought to vacate the arbitrator's ruling, referenced as

5

"Ruling 1," that the "painting over of the one handicapped (disabled) parking space in the underground garage of Building 1 designated as parking space 26, and given to a non-physically disabled owner, did not violate the 2001 . . . Building Code and/or the approved plans for the construction of Building 1 where Petitioners reside."

Petitioners also sought to vacate or correct the arbitrator's ruling, referenced as "Ruling 2," that "[t]he providing of an accessible space for the exclusive use of Robert Haze is conditioned upon [Petitioners] surrendering to [the Association] one of their originally assigned parking spaces."

The trial court rejected both requests. It found "the fundamental weakness in Petitioners' arguments based on the Arbitrator's finding [(Ruling 1)] that the Building Code provisions were complied with is Petitioners' failure to demonstrate that they would have obtained a different award had the Arbitrator held that the underground parking garage was not in compliance with those provisions." The court also found Ruling 2 is not "'so egregious as to constitute misconduct or so profound as to render the process unfair.'"

### E. Award of Attorney Fees

The Association moved for attorney fees under Civil Code section 5975, subdivision (c), which authorizes attorney fees to the prevailing party in actions "to enforce the governing documents." Petitioners argued that Ruling 2 "should be modified to avoid (among other things) a violation of Section 6.1.7 of the . . . CC&Rs." The trial court found that the Association was the prevailing party on this issue and awarded it a pro-rata share of attorney fees (i.e., 50 percent of the requested fees) pursuant to Civil Code section 5975, subdivision (c).

6

The amended judgment, dated February 26, 2021, confirms the arbitrator's Final Award and grants the Association attorney fees in the amount of $17,093.50.

## II. DISCUSSION

Petitioners contend the arbitrator erred in issuing Rulings 1 and 2, and that the trial court erroneously denied their petition to vacate Ruling 1 and to vacate or correct Ruling 2. Petitioners further contend the trial court improperly awarded attorney fees to the Association. We reject each contention.

### A. Standard of Review

A judgment entered upon confirmation of an arbitration award is appealable on the ground the award exceeded the arbitrator's authority. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 366, 372-373, 374 (*Intel Corp.*); Code Civ. Proc., § 1286.2, subd. (a)(4).)[2] Although we review the trial court's order confirming the award de novo (*Intel Corp.,* at p. 376, fn. 9), both the trial court and the Court of Appeal review the arbitrator's award deferentially. The award must be upheld if it is "even arguably based on the contract" between the parties. (*Id.* at p. 381.) Courts also must defer to the arbitrator's determination of the scope of his or her contractual authority to fashion remedies. (*Id.* at p. 376.) Thus, where the issue is the remedy chosen by the arbitrator, the question on appeal is whether the remedy is "rationally drawn from the contract" as interpreted by the arbitrator. (*Id.* at pp. 376-377.)

Our review does not extend to the merits of the award or to the arbitrator's underlying conclusions of fact and law. Indeed, arbitrators "'may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly

_____

[2] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

reject a claim that a party might successfully have asserted in a judicial action.' [Citations.]" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10-11 (*Moncharsh*).)

"Although section 1286.2 permits the court to vacate an award that exceeds the arbitrator's powers, the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers." (*Intel Corp.*, *supra*, 9 Cal.4th at p. 372.) "Arbitrators 'do not exceed their powers' . . . merely by rendering an erroneous decision on a legal or factual issue, so long as the issue was within the scope of the controversy submitted to the arbitrators. 'The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement.'" (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775-776.)

## B. The Trial Court Did Not Err by Confirming Rulings 1 and 2

It is undisputed the arbitrator erroneously found there were no Building Code violations in the Association's underground parking garage. As the trial court explained, section 1109.A.4 of the Building Code "require[s] that the Association maintain one handicapped parking space in the underground garage to Building 1 at all times," and section 1109.A.6 entitled Robert, upon request, to a handicapped parking space in the garage. Once he made that request, Robert acquired "a statutory right under the Building Code to a handicapped parking spot in the underground garage."

"Arbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*);

8

*Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 272-277; *California Dept. of Human Resources v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 1420, 1434.) But ""'[a]rbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error.""" (*Richey* at p. 917.) "A rule of judicial review under which courts would independently redetermine the scope of an arbitration agreement already interpreted by the arbitrator would invite frequent and protracted judicial proceedings, contravening the parties' expectations of finality." (*Intel Corp.*, *supra*, 9 Cal.4th at p. 373.)

Circumstances justifying judicial review arise when the arbitrator imposes a remedy not authorized by the arbitration agreement. (*Intel Corp.*, *supra*, 9 Cal.4th at p. 375.) Here, Petitioners specifically agreed to submit the issue of the "breach of the Association's CC&Rs and violation of associated law" to binding arbitration and requested that the arbitrator award "a permanent handicapped parking space for the exclusive use of Robert, as a reasonable accommodation, *either* in the underground garage near the elevator, *or* outside as close as possible to the underground garage." (Italics added.) Petitioners have not shown that the arbitrator exceeded his powers by granting one of the two proposed alternative requests for accommodation submitted to arbitration.

Petitioners also fail to explain how the award is inconsistent with the vindication of their unwaivable statutory rights. Petitioners do not claim that the arbitration proceeding itself was unfair, that they were denied discovery or prevented from presenting or cross-examining witnesses, or that they were

9

otherwise thwarted in their efforts to prove their claims. Similarly, Petitioners do not contend that the arbitrator was biased or corrupt, or that the award was procured by fraud or undue influence.

Under Petitioners' broad construction of the public policy exception, every arbitration award that denies statutory relief would be open to plenary judicial review as "inconsistent" with the policies underlying those statutory schemes. If that were the law, "[t]he public policy exception would swallow the rule of arbitral finality." (*City of Richmond v. Service Employees Internat. Union, Local 1021* (2010) 189 Cal.App.4th 663, 675.)

In any event, "[a] judgment is reversible only if any error or irregularity in the underlying proceeding was prejudicial." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527.) Appellant bears the burden of demonstrating prejudice, which is never presumed. (Cal. Const., art. VI, § 13; *In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56; *Freeman*, at p. 528.) Prejudice generally is measured by asking whether "'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800, quoting *People v. Watson* (1956) 46 Cal.2d 818, 836; *Rodriguez v. Parivar, Inc.* (2022) 83 Cal.App.5th 739, 756-757.)

Petitioners have not met this burden. We agree with the trial court that even if the arbitrator did err in issuing Ruling 1, petitioners have failed to show that it must be reversed. As the court explained, "the fundamental weakness in Petitioners' arguments based on the Arbitrator's finding that the Building Code provisions were complied with is Petitioners' failure to demonstrate that they would have obtained a different award had the Arbitrator held that the underground parking garage

10

was not in compliance with those provisions.  Simply stated, Petitioners failed to demonstrate that there was any alternative order the Arbitrator could have made that the Association could have legally complied with."

It is undisputed that the existing underground parking spaces are owned by the individual homeowners, and that the Association lacks authority to reconfigure or reassign those spaces to create a handicapped accessible space in the garage. Petitioners do not challenge the retained architect's opinion that the underground garage cannot be safely expanded or modified to add a handicapped accessible space.  Given that the creation of an underground handicapped space is not a remedy the arbitrator could have legally mandated, the trial court appropriately declined to vacate Ruling 1.  (See, e.g., *Richey*, *supra*, 60 Cal.4th at p. 921 ["[E]ven if the arbitrator was mistaken in relying on an honest belief defense, plaintiff was not prejudiced thereby and the arbitrator's award in defendants' favor will stand"].)

Concerning Ruling 2, the arbitrator's Final Award does not allow Petitioners to keep their two assigned underground parking spaces in addition to a third assigned outdoor space for Robert's exclusive use.  Nothing in the record suggests that any other homeowners in the condominium complex have more than two assigned parking spaces at their disposal.

Citing *Astralis Condo. Ass'n v. Sec'y, US Dep't of Hous. & Urban Dev.* (1st Cir. 2010) 620 F.3d 62 (*Astralis*), the arbitrator determined that Robert's exclusive use of the outside handicapped accessible space required Petitioners to "surrender[]" to the Association one of their originally assigned underground parking spaces.

11

The complainants in *Astralis* also "own[ed] their unit and two parking spaces." (*Astralis*, *supra*, 620 F.3d at p. 64.) Citing physical disabilities, they requested, but were denied, the exclusive use of two handicapped accessible parking spaces close to their unit. (*Id.* at p. 65.) An administrative law judge found that the condominium association had discriminated against the complainants and directed that they "receive exclusive use of the two handicapped parking spaces at issue; provided, however, that they agree to surrender their originally assigned spaces." (*Ibid.*)

Petitioners contend the arbitrator exceeded his authority by making the same ruling here. We are not persuaded. As the trial court observed, *Astralis* "at least suggests that such a [surrender] condition does not render a reasonable parking accommodation per se invalid." Moreover, the arbitrator was allowed to base his decision upon what he believed was just and equitable under the circumstances. (See *Moncharsh*, *supra*, 3 Cal.4th at pp. 10-11.)

### C. The Trial Court Properly Awarded Attorney Fees to the Association

Petitioners contend the trial court erred by awarding the Association a portion of its attorney fees under Civil Code section 5975, subdivision (c) of the Davis-Stirling Common Interest Development Act (Act). That subdivision provides: "In an action to enforce the governing documents, the prevailing party *shall* be awarded reasonable attorney's fees and costs." (Italics added.) The award is not discretionary. The Act "mandates the award of attorney's fees to the prevailing party." (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 776.)

The CC&Rs are part of a homeowners association's "'governing documents.'" (*Branches Neighborhood Corp. v. CalAtlantic Group, Inc.* (2018) 26 Cal.App.5th 743, 754, fn. 6.)

12

The trial court tentatively determined Petitioners' action was not an action to enforce the Association's governing documents, but later ruled that because Petitioners requested that "'Ruling 2' . . . be modified to avoid (among other things) a violation of Section 6.1.7 of the . . . CC&Rs," the Association, as the prevailing party on that issue, is entitled to a pro-rata share of its fees. The court awarded 50 percent of those fees, i.e., $17,093.50. Petitioners have not demonstrated error.

## III. DISPOSITION

The amended judgment confirming the final arbitration award and granting the Association a pro-rata share of its attorney fees is affirmed. The Association shall recover its costs on appeal, along with a pro-rata share of its attorney fees on appeal pursuant to Civil Code section 5975, subdivision (c). The matter is remanded to the trial court with directions to determine a reasonable award for attorney fees in this appeal.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

BALTODANO, J.

13

Kevin DeNoce, Judge
Benjamin Coats, Judge
Superior Court County of Ventura

_____

Silver and Arsht, Samuel J. Arsht and Marsha C. Brilliant, for Plaintiffs and Appellants.

Pamela Abbott Moore and Nicholas J. Wolfsen, for Defendant and Respondent.