June 17, 2022

**Supreme Court**

No. 2020-112-M.P.
(PC 12-6638)

Curtis W. Andrade et al.      :

v.           :

Westlo Management LLC et al.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Curtis W. Andrade et al.          :

v.                                :

Westlo Management LLC et al.      :

Present: Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  The defendants, Westlo Management LLC (Westlo), Smith/Keen Limited Partners (Smith/Keen), and Lindsey Hahn, seek review of a Superior Court order granting partial summary judgment on counts one, two, three, and seven of the plaintiffs' third-amended complaint against Westlo in favor of the plaintiffs, Curtis W. Andrade and The Rhode Island Commission for Human Rights (the commission).[1]  The defendants assert that the existence of genuine issues of material fact precluded partial summary judgment and further contend that the commission did not have standing to intervene in this matter.

---

[1] The order on review also granted the defendants' cross-motion for summary judgment in favor of defendant Lindsey Hahn and denied plaintiffs' motion for summary judgment against defendant Smith/Keen.  The plaintiffs have not sought review of those portions of the Superior Court order.  Therefore, only defendant Westlo has a stake in seeking to overturn the partial summary judgment against it for counts one, two, three, and seven of the third-amended complaint.

We issued a writ of certiorari and directed the parties to appear and show cause why the issues raised by defendants should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we quash that portion of the Superior Court order granting partial summary judgment in favor of plaintiffs as to liability against Westlo on counts one, two, three, and seven.

# I

## Facts and Travel

On August 1, 2011, plaintiff Curtis Andrade moved into a low-income apartment unit at the Westminster Lofts (the complex), a residential apartment complex located at One Fulton Street in Providence, Rhode Island. The defendant Smith/Keen owned the complex, and defendant Westlo operated, managed, and maintained it.

At Andrade's deposition, he testified that, before moving into the complex, a leasing agent, Iris Ferguson, informed him that he was not permitted to have his dog, Enzo, an American Staffordshire terrier, which is commonly known as a pit bull, in the complex because a pit bull was on the restricted breed list under the complex's pet policy. Andrade testified that, in response to Ferguson's statement, he told her that the dog was his support animal. Andrade further stated, however, that the

manager of the complex then told him that he would need to fill out and submit paperwork for the dog and provide certain information including proof that Enzo had been vaccinated and neutered. Andrade indicated that he could not recall whether he ever filled out and submitted the necessary paperwork.

Andrade testified that, when he moved into the complex in August 2011, he did not bring Enzo with him; the dog stayed with his mother, Lisa Andrade, at her home. He did, however, bring the dog to the complex in December 2011 because, according to Andrade, his mother was away for the weekend and he had to watch Enzo. Andrade stated that the dog was with him at his apartment from Friday until Saturday morning. He acknowledged that he did not inform Westlo that he was bringing the dog to his apartment unit for that weekend.

An incident occurred that Saturday, concerning which there are conflicting accounts. According to Andrade, he was exiting the elevator when another tenant, Neil Abate, saw him with the dog. Andrade testified in his deposition that Enzo had a "red, rubber toy" in his mouth and was on a leash while riding in the elevator; however, Andrade removed the leash just before the elevator doors opened. Andrade contended that, when the elevator doors opened, Enzo's tail was "wagging[,]" indicating, according to Andrade, that the dog wanted to play with Abate. Andrade maintained that, when Enzo was near Abate, the dog kept his front paws on the ground and never made physical contact with Abate. Andrade testified that Abate

appeared "dumbfounded" but did not seem frightened. Andrade further asserted that he did not grab the dog's collar at any point during the encounter because "[t]here was no need."

When testifying at his deposition, Abate offered a different narrative than that of Andrade. He stated that he was waiting for the elevator near his apartment unit when the doors opened and Andrade's dog came "running out" at him. Abate additionally asserted that the dog pinned him against the wall, and that Andrade made no effort to remove the dog. According to Abate, it was not until he made a second request for the dog to be removed that Andrade pulled the dog off him.

Although Abate acknowledged that the dog did not bite or growl at him, he testified that he was in complete shock when the dog jumped on him. He did not recall the dog's tail wagging or a toy being in the dog's mouth during the incident. Moreover, Abate testified, the dog was not looking at him when its front paws were against him; rather, the dog's head was turned facing Andrade. Abate stated that it was his belief that the dog was trying to attack him and that, if he had lost his composure, the dog would have "mauled" him.

After the incident occurred, Abate made a report to the Westlo building manager, Lindsey Hahn. Shortly after Abate lodged the complaint, Hahn contacted Andrade informing him that the dog was not allowed on the premises. Andrade testified that, after his conversation with Hahn, he spoke with his doctor at his annual

physical examination about being "overwhelmed psychologically [and] emotionally," due in part to the issue with the dog. Andrade indicated that this was the first time he discussed potentially having a support animal with his doctor. Andrade's doctor, Wadid Azer, M.D., wrote a note on December 22, 2011, stating that Andrade "would benefit in having a dog due to his medical condition[.]" Doctor Azer's note was attached to a letter sent by Andrade to Hahn, which indicated that he had a disability and requested that he be allowed to have an emotional support dog as "a reasonable accommodation under the federal Fair Housing Amendments Act of 1988[.]"

Hahn rejected Andrade's request by a letter dated January 11, 2012. In the letter, Hahn explained that, before Andrade had moved into the complex, he was made aware of the breed restrictions in the building's pet policy. Hahn indicated that Westlo "would be happy to allow [Andrade] to have a dog that falls within [Westlo's] pet addendum rules and regulations[.]" She further asserted that Andrade had violated the building policy by bringing his dog on the premises and that one of the residents felt threatened by the dog, which had been "allowed to roam the building off of its leash violating yet again another building policy." Hahn concluded the letter by pointing out that, if the dog was an essential part of his well-being, he could terminate his lease early; however, if the dog returned to the premises, management would consider eviction.

On January 30, 2012, Dr. Azer wrote to Hahn explaining in greater detail Andrade's need for the dog as a service animal. He stated that Andrade has an anxiety disability and indicated that Enzo had been trained in a variety of areas and provided "physical, emotional and therapeutic assistance to Mr. Andrade." Later, on February 3, 2012, Andrade sent another letter to Hahn, in which he stressed that his dog should not be merely considered a "pet" because it is a dog that assists with his disabilities and requested that she reconsider a reasonable accommodation to permit the dog to be on the premises as Andrade's "service" animal. Hahn responded by a letter dated February 14, 2012, wherein she reiterated the pet policy's breed restrictions that Andrade had been made aware of when he moved into the complex on August 1, 2011. She again stated that she would understand if Andrade needed to end the lease early as a result of the dog restrictions.

On February 22, 2012, Andrade filed a charge of discrimination with the commission. Later, on July 16, 2012, the commission found probable cause that defendants had violated Andrade's rights. The parties engaged in unsuccessful settlement discussions in August 2012. In September 2012, Westlo initiated eviction proceedings against Andrade for nonpayment of rent. The commission issued a right-to-sue letter to Andrade on November 1, 2012. On December 10, 2012, pursuant to a court order, Andrade was evicted from his apartment at the complex.

On December 28, 2012, Andrade filed the instant action. The commission issued a second right-to-sue letter on April 2, 2013. A hearing justice granted the commission's motion to intervene as a party plaintiff by an order entered on November 17, 2014. The defendants subsequently filed a motion to vacate and a motion to reconsider the order granting the commission's intervention. By an order dated July 28, 2015, the same hearing justice who entered the first order granting the commission's intervention denied defendants' motion to reconsider. The plaintiffs filed their third-amended complaint on July 3, 2018.

The third-amended complaint pled the following counts: (1) unlawful denial of the right to make and enforce contracts and lease real property due to Andrade's disability, in violation of G.L. 1956 chapter 112 of title 42 (count one); (2) unlawful denial of full and equal access to housing and public accommodations based on Andrade's disability, pursuant to G.L. 1956 chapter 87 of title 42 (count two); (3) unlawful denial of equal access to public housing and accommodations based on a disability, in violation of G.L. 1956 chapter 37 of title 34 (count three); (4) unlawful denial of right to have a service animal, pursuant to G.L. 1956 chapter 9.1 of title 40 (count four); (5) unlawful retaliation under chapter 9.1 of title 40 by moving for eviction proceedings (count five); (6) unlawful interference, coercion, or intimidation, in violation of § 34-37-5.1, by moving for eviction proceedings (count six); and (7) unlawful denial of equal access to public accommodations based on a

disability, pursuant to 42 U.S.C. § 3604(f)(3)(B), by refusing to make reasonable accommodations (count seven).[2]

On August 20, 2018, plaintiffs filed a motion for partial summary judgment with respect to counts one, two, three, four, and seven of the third-amended complaint, to which defendants objected on September 28, 2018. The defendants also filed a cross-motion for summary judgment on all counts of the third-amended complaint on September 28, 2018, to which the commission objected on October 15, 2018, and to which Andrade objected on November 2, 2018. The defendants' cross-motion for summary judgment also asserted that the commission did not have standing to bring suit as a co-plaintiff. A hearing on the parties' cross-motions for

---

[2] We note that plaintiffs' third-amended complaint uses the term "service animal" within the meaning of G.L. 1956 chapter 9.1 of title 40, which defines "service animal" as "a dog that has been, or is being, specifically trained to assist an individual with a disability, and includes a guide dog or hearing dog." Section 40-9.1-1.1(6). The plaintiffs' third-amended complaint also uses the term "personal assistive animal" within the meaning of G.L. 1956 chapter 87 of title 42, which defines "personal assistive animal" as "an animal specifically trained, by a certified animal training program, to assist a person with a disability perform independent living tasks." Section 42-87-3(4). The record is devoid of any evidence that Andrade's dog received the requisite training to fall within the meaning of these classifications. Therefore, for purposes of this opinion, we utilize the term "assistance animal," which has been defined by the United States Department of Housing and Urban Development (HUD) as "an animal that works, provides assistance, or performs tasks for the benefit of a person with a disability, or provides emotional support that alleviates one or more identified symptoms or identified effects of a person's disability." HUD Office of Fair Housing and Equal Opportunity, Notice FHEO-2013-01, at 10 (issued Apr. 25, 2013).

summary judgment was held on December 5 and 7, 2018. The hearing justice[3] issued a bench decision on February 12, 2019.

In the decision, the hearing justice granted plaintiffs' motion for summary judgment on counts one, two, three, and seven against Westlo, finding that Westlo had discriminated against Andrade by denying him the reasonable accommodation of having his dog at the complex as an assistance animal. She denied plaintiffs' motion on count four because she found there to be a genuine issue of material fact as to whether the dog had received the requisite training under the statute. Moreover, the hearing justice refused to interfere with the order granting the commission's motion to intervene, noting that no expanded record existed. Additionally, the hearing justice denied plaintiffs' motion for summary judgment against Smith/Keen, and she granted the defendants' cross-motion for summary judgment in favor of Hahn. At the conclusion of the hearing, defense counsel highlighted that the incident with Abate had occurred *before* Andrade sent the letters requesting a reasonable accommodation for him to have his dog in his apartment unit as an assistance animal—a fact that the hearing justice had previously misstated in her bench decision.

---

[3] The hearing justice who entertained the cross-motions for summary judgment was a different justice from the one who had granted the commission's motion to intervene in 2014.

Thereafter, plaintiffs filed a motion for approval of proposed findings of uncontroverted facts under Rule 56(d) of the Superior Court Rules of Civil Procedure. The defendants objected generally to the hearing justice issuing findings of fact; however, the hearing justice ultimately found defendants' argument to be unpersuasive and indicated that she would review the transcripts and issue findings of fact at a later date. The hearing justice also acknowledged her having cited to an incorrect date for the incident involving Abate. She explained that she cited the date referenced in Abate's deposition and only later became aware that the parties agreed that the incident occurred prior to the delivery of Andrade's letters to Hahn. For that reason, the hearing justice declined to make a finding of fact on that particular issue.

At a hearing on March 5, 2020, the hearing justice indicated that the order granting partial summary judgment had not been "circulated amongst the parties, nor was it ever signed and made part of the record." Later that same day, an order granting partial summary judgment was entered, which also included the hearing justice's findings of fact. The defendants thereafter filed a petition for writ of certiorari to challenge the March 5, 2020 order, which this Court granted on December 24, 2020.

# II

## Standard of Review

"Summary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 451 (R.I. 2013) (brackets omitted) (quoting *DeMaio v. Ciccone*, 59 A.3d 125, 129 (R.I. 2013)). We "review the grant of a motion for summary judgment *de novo*, employing the same standards and rules used by the hearing justice." *Oliver v. Narragansett Bay Insurance Company*, 205 A.3d 445, 449 (R.I. 2019) (quoting *Cancel v. City of Providence*, 187 A.3d 347, 349 (R.I. 2018)). This Court will "affirm a trial court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Cancel*, 187 A.3d at 350). A party opposing a motion for summary judgment "bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (quoting *Cancel*, 187 A.3d at 350). "Summary judgment should enter against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 449-50 (quoting *Cancel*, 187 A.3d at 350).

Regarding intervention as of right under Rule 24(a) of the Superior Court Rules of Civil Procedure, "this Court reviews a trial justice's grant of a motion to intervene for abuse of discretion, reversing only if the justice failed to apply the standards set forth in Rule 24(a)(2), or otherwise committed clear error." *Hines Road, LLC v. Hall*, 113 A.3d 924, 928 (R.I. 2015) (brackets omitted) (quoting *Town of Coventry v. Baird Properties, LLC*, 13 A.3d 614, 619 (R.I. 2011)). In a similar fashion, "we have also utilized the abuse of discretion standard of review in the context of Rule 24(b)(2)"—permissive intervention. *Id.*

## III

## Discussion

## A

## Summary Judgment

The defendant Westlo first argues that, because plaintiffs' third-amended complaint contains claims sounding in both law and equity, Westlo was denied its right to a trial by jury when the hearing justice granted summary judgment. Specifically, Westlo contends that there were genuine issues of material fact that precluded summary judgment. For example, Westlo argues that there was no evidence introduced that Andrade's dog was a professionally trained service animal. Additionally, Westlo asserts that the question of whether an accommodation is reasonable under the Fair Housing Act (FHA) is one of fact, requiring a close

examination of particular circumstances. Thus, Westlo argues, it was an error for the hearing justice to make determinations of factual issues.

Andrade argues that the hearing justice did not err in granting partial summary judgment because, he contends, there were no genuine issues of material fact as to any of the elements of a reasonable-accommodation-or-modification claim. Andrade presents explanations as to why he satisfied the requirement of proving by a preponderance of the evidence the elements of a reasonable-accommodation claim. The commission similarly argues that the hearing justice did not err in granting plaintiffs' motion for summary judgment. In particular, the commission argues that Westlo did not present any argument that Andrade's request would involve undue expenses or other burdens. The commission further contends that the existence of Andrade's dog at the complex would not fundamentally alter Westlo's operations, as it would still be able to offer housing. In sum, the commission maintains that Andrade presented sufficient evidence of his disability and the reasonableness of his requested accommodation.

At the outset, we observe that counts one, two, three, and seven of the third-amended complaint, which contain both state and federal claims, are based on the theory that Westlo refused to make a reasonable accommodation or modification of its pet policy to allow for Andrade's dog to serve as his personal assistance animal. The Rhode Island Fair Housing Practices Act (FHPA), in relevant part, closely

parallels the federal FHA.  Specifically, the  relevant language of the FHA appearing in  42 U.S.C. § 3604(f)(3)(B)  and  the  language  of  the  FHPA  appearing  in § 34-37-4(e)(1) are virtually identical, yet state caselaw on the relevant subsections of the FHPA is sparse.  We therefore address plaintiffs' claims by referring solely to federal decisions dealing with the FHA. *See Narragansett Electric Company v. Rhode Island Commission for Human Rights*, 118 R.I. 457, 459-60, 374 A.2d 1022, 1023 (1977) (explaining the Court's reliance on federal caselaw when the relevant language of the State Fair Employment Practices Act, which had seldom been interpreted by this Court, closely mirrored the relevant sections of Title VII of the Civil Rights Act of 1964).

Under  the  FHA,  specifically  42  U.S.C.  §  3604(f)(3)(B),  unlawful discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford  such  person  equal  opportunity  to  use  and  enjoy  a  dwelling[.]" *See* § 34-37-4(e)(1) ("An owner may not refuse to make reasonable accommodations in rules, policies, practices, or services when those accommodations may be necessary to afford  an  occupant  with  a  disability  equal  opportunity  to  use  and  enjoy  a dwelling.").  An alteration to a pet policy to allow for an assistance animal has been determined to be a reasonable accommodation. *See Warren v. Delvista Towers Condominium Association, Inc.*, 49 F. Supp. 3d 1082, 1086 (S.D. Fla. 2014) (holding

that a "building with a 'no pets' policy must accommodate a blind person and his seeing eye dog[,]" otherwise "the blind person will not have an equal opportunity to use and enjoy a dwelling") (quoting 24 C.F.R. § 100.204(b)).

In order to establish that a defendant failed to provide a reasonable accommodation in the form of an assistance animal, a plaintiff must show that (1) he or she is a person with a disability, (2) the plaintiff requested an accommodation, (3) the defendant knew or should have known that the plaintiff is a person with a disability, (4) the defendant denied the plaintiff's request for a reasonable accommodation, and (5) an assistance animal is reasonable and necessary to afford him or her an equal opportunity to use and enjoy his or her dwelling. *See Castillo Condominium Association v. United States Department of Housing and Urban Development*, 821 F.3d 92, 98 (1st Cir. 2016); *Astralis Condominium Association v. Secretary, United States Department of Housing and Urban Development*, 620 F.3d 62, 67 (1st Cir. 2010). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *Dubois v. Association of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006) (quoting *United States v. California Mobile Home Park Management Company*, 107 F.3d 1374, 1380 (9th Cir. 1997)).

Beginning with the first step in the analysis—determining whether Andrade is a person with a disability—we turn to the FHA's definition of "handicap" with

respect to a person, which defines it as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment[.]" 42 U.S.C. § 3602(h)(1)–(3). In the case at bar, Andrade presented a medical note from Dr. Azer that specifically stated that Andrade had been treating with him since 2009 and that Andrade had been diagnosed with anxiety and depression.

Upon reviewing the hearing justice's decision on summary judgment, we observe that there was some discussion as to whether this medical note would have been admissible. However, the hearing justice found this to be inconsequential because Andrade, in an affidavit, attested to his anxiety and depression and further stated that his condition substantially limits his ability to sleep and work. In relying on Andrade's affidavit, the hearing justice cited to *Katz v. City Metal Co., Inc.*, 87 F.3d 26 (1st Cir. 1996), for the proposition that "[t]here is * * * no general rule that medical testimony is always necessary to establish disability." *Katz*, 87 F.3d at 32.[4]

---

[4] Although the issue in *Katz* pertained to the Americans with Disabilities Act (ADA), we note that the United States Supreme Court has held that the definition of "disability" in the ADA and the definition of "handicap" in the FHA should be construed similarly. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) ("The ADA's definition of disability is drawn almost verbatim from the definition of * * * 'handicap' contained in the [FHA]. Congress's repetition of a well-established term carries the implication that Congress intended the term to be construed in accordance with pre-existing regulatory interpretations.").

- 16 -

Not only did Andrade in his affidavit attest to having anxiety and depression, but he also testified at his deposition to his condition and its implications on his daily activities. In particular, Andrade testified that he has been treated for anxiety for years, which includes the use of medication. He asserted that his disability has prevented him from working since 2003, resulting in his receiving Social Security disability benefits. Significantly, in its papers before this Court, Westlo does not specifically challenge the hearing justice's finding that "plaintiff has provided sufficient evidence to demonstrate a lack of genuine issue of fact as it pertains to the disability element" of the reasonable-accommodation analysis.

Similarly, we agree that plaintiffs satisfied the second, third, and fourth prongs—plaintiff made a request for an accommodation, defendant knew or should have known of plaintiff's disability, and defendant denied plaintiff's request for a reasonable accommodation. Andrade submitted two separate letters, delivered to Westlo, that alerted Westlo to Andrade's disability and requested an accommodation under the FHA. Hahn replied to both letters denying Andrade's request for a reasonable accommodation. Furthermore, Hahn testified that she was not "skeptical" about Andrade's disability and, in her February 14, 2012 letter, she acknowledged that Andrade's dog provided him with "the physical, emotional and therapeutic assistance" that he needed. For these reasons, we see no genuine issues of material fact that exist as to the second, third, and fourth prongs.

Finally, we shift our focus to the fifth prong—whether plaintiff's dog is reasonable and necessary to afford plaintiff an equal opportunity to use and enjoy his dwelling. Although neither the FHA nor the FHPA specifically define a "reasonable accommodation," courts have essentially determined that a request for an assistance animal may be denied and an accommodation can be deemed unreasonable if it "imposes * * * fundamental alteration in the nature of [the housing provider's services] or undue financial and administrative burdens." *Anderson v. City of Blue Ash*, 798 F.3d 338, 362 (6th Cir. 2015) (quoting *Hollis v. Chestnut Bend Homeowners Association*, 760 F.3d 531, 542 (6th Cir. 2014)).

Moreover, HUD issued a final rule in 2008 that states that a request for an assistance animal may also be denied if "that animal's behavior poses a direct threat and its owner takes no effective action to control the animal's behavior so that the threat is mitigated or eliminated." Pet Ownership for the Elderly and Persons with Disabilities, 73 Fed. Reg. 63837 (Oct. 27, 2008) (codified at 24 C.F.R. pt. 5). The rule further states that the FHA "requires the existence of a significant risk—not a remote or speculative risk." *Id.* "Accordingly, the determination cannot be the result of fear or speculation about the types of harm or damage an animal may cause, or evidence about harm or damage caused by other animals[.]" *Id.* The 2008 HUD rule also adds that:

> "The determination of whether an assistance animal poses
> a direct threat must rely on an individualized assessment

that is based on objective evidence about the specific animal in question, such as the animal's current conduct or a recent history of overt acts. The assessment must consider the nature, duration, and severity of the risk of injury; the probability that the potential injury will actually occur; and whether reasonable modifications of rules, policies, practices, procedures, or services will reduce the risk. In evaluating a recent history of overt acts, a provider must take into account whether the assistance animal's owner has taken any action that has reduced or eliminated the risk." *Id.*

Although we see no direct evidence of undue financial and/or administrative burdens imposed on Westlo, a close review of the record reveals conflicting testimony between Andrade and Abate as to whether Andrade's dog posed a direct threat. Abate specifically testified that he felt threatened by Andrade's dog and further indicated that he believed he would have been "mauled" had he lost his composure during the incident with the dog. The hearing justice initially emphasized that the incident with Abate occurred after the requests for a reasonable accommodation had been denied, which was later corrected by the parties. The hearing justice stated in her bench decision, "I'm struck by and I kind of kept coming back to the fact that that incident happened after plaintiff's request had twice been denied[,] in January of 2012 [and] in February of 2012 [when] that incident between the dog and Mr. Abate didn't occur until March." The hearing justice ultimately determined that, in reviewing the evidence, she "at best * * * could say that Mr. Abate was startled by a large dog running up to him on an elevator and putting his

- 19 -

paws on him which then pinned him against the wall." She found that the incident was not indicative of violent behavior.

We take note that the hearing justice in rendering her decision seemed to rely on the incorrect fact that the incident with Abate occurred after the denials of the reasonable accommodation requests. We underscore that Westlo's letters denying Andrade's request cited the incident with Abate as a factor for its denial. In addition, the conflicting testimonial evidence regarding the incident with Abate alert us to a question of a material fact concerning whether the dog posed a direct threat. Therefore, due to the highly fact-specific nature of the assessment of an assistance animal as well as the conflicting evidence presented, we disagree with the hearing justice and conclude that this issue was not appropriate for summary judgment.

Andrade's decision to remove the dog's leash while in the elevator additionally calls into question whether he could safely handle the dog in the complex. To that end, Hahn's letters specifically cited the incident between Andrade's dog and Abate as a factor in denying his reasonable-accommodation request and further highlighted that Andrade's unleashing of his dog was also against the complex's policy. Accordingly, we hold that there is a genuine issue of material fact as to whether Andrade's dog was a direct threat to the health and safety of others in the complex. *See Warren*, 49 F. Supp. 3d at 1089 (denying summary judgment because a genuine issue of material fact remained as to whether a dog "pose[d] a

direct threat to members of the condominium association, and whether that threat can be reduced by other reasonable accommodations").

We are likewise of the opinion that there is a genuine issue of material fact as to whether Andrade's dog was necessary for him to fully enjoy his dwelling. "[A] 'necessary' accommodation is one that alleviates the effects of a disability." *Bhogaita v. Altamonte Heights Condominium Ass'n, Inc.*, 765 F.3d 1277, 1288 (11th Cir. 2014). The necessity determination "asks whether the requested accommodation ameliorates the disability's effects." *Id.* at 1289. In her bench decision, the hearing justice emphasized that the test is not whether "plaintiff requires assistance from the dog one hundred percent of the time"; rather, the test is "whether or not the dog alleviates a disability to ensure plaintiff's enjoyment of his dwelling[.]"

Although we do not disagree with the hearing justice's characterization of the test, our assessment of the record on review demonstrates that there is conflicting evidence on this issue, thus removing it from the purview of summary judgment. While Dr. Azer's letter and Andrade's affidavit indicated that the dog assisted Andrade in social situations, reduced his anxiety, and prevented him from oversleeping, there was also evidence to suggest that Andrade's dog was not a necessity.

When Andrade was signing the required paperwork for the apartment, he was told by the leasing agent that he would not be able to keep the dog at the complex; whereas, the building manager told him he needed to fill out additional paperwork in order to keep the dog; ultimately, though, the dog went to live with Andrade's mother. The evidence shows that Andrade lived for over one year without his dog while residing at the complex, and the record is devoid of any evidence suggesting that his disability was affected in any way by not having his dog. The question remains "whether the requested accommodation ameliorates the disability's effects." *Bhogaita*, 765 F.3d at 1289.

Additionally, Westlo presented Andrade with the option of terminating his lease early when it informed him that his dog was not permitted on the premises; Andrade, however, continued to live at the complex until he was evicted for nonpayment of rent in December 2012. Andrade also testified at his deposition that, as he prepared for an upcoming trip, he had no plans of bringing the dog along with him. Taking these facts into consideration, we conclude that a genuine issue of material fact exists as to the issue of necessity.

As the commission recognizes in its counterstatement pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure, "the question of whether a companion or assistance animal is an appropriate and reasonable accommodation for a disability is a question of fact, not a matter of law."

Accordingly, we are of the opinion that the hearing justice erred in granting the plaintiffs' motion for partial summary judgment as to the issue of the liability of Westlo.

## B

### Intervention

Finally, Westlo argues that the commission did not have standing to intervene in the case at bar. Westlo specifically states that the commission, as support for its motion to intervene, cited to G.L. 1956 § 28-5-28, which does not provide a statutory basis for the commission's intervention in this case. Westlo argues that, even if § 28-5-28 had been properly triggered, the commission's rules only allow for the commission to file a substantive complaint if neither the attorney general nor the complainant has commenced a civil action.

The commission contends that it sought to intervene pursuant to Rule 24(a) of the Superior Court Rules of Civil Procedure, which states that, upon timely application and satisfaction of the requirements set forth in the rule, "anyone shall be permitted to intervene in an action[.]" The commission contends that it has a duty to protect the public interest, which, it argues, would not be adequately represented by either Andrade or Westlo. As to the timeliness of its application, the commission avers that Westlo has failed to establish how the determination of timeliness of the application by the hearing justice was the product of an abuse of discretion or was

clear error. Moreover, the commission argues that it also properly moved to intervene under Rule 24(b)(2), which allows for permissive intervention.

The travel of the commission's motion to intervene in the Superior Court is confusing to say the least. It first appears on the docket with the entry of an order on November 17, 2014, granting the motion. The order indicates that a hearing on the motion was held on November 12, 2014. The docket itself, however, contains no entry that such a motion was ever filed. Regrettably, Westlo has not provided us with a transcript of the November 12, 2014 hearing.

The next listing in the docket with respect to a motion to intervene is defendants' motion to vacate the November 17, 2014 order for reason that the motion to intervene is not listed in the docket and the motion is not on file "on either the electronic filing system or in the [c]ourt's file." The docket reflects that the motion to vacate was heard and denied on July 15, 2015, although no order can be found in the electronic filing system.

Ultimately, on June 29, 2015, the commission filed a motion to intervene, which presumably is a copy of the original motion to intervene because it lists a hearing date of November 12, 2014, and includes a date stamp of October 27, 2014. On July 7, 2015, defendant filed a motion to reconsider the November 17, 2014 order, which motion was denied at the hearing on July 15, 2015, and by order entered on July 28, 2015.

Pursuant to Article I, Rule 10(b)(1) of the Supreme Court Rules of Appellate Procedure, "within twenty (20) days after filing the notice of appeal the appellant shall order from the reporter a transcript of such parts of the proceedings not already on file as the appellant deems necessary for inclusion in the record." We have previously underscored that "it is the appellant's duty 'to ensure that the record is complete and ready for transmission.'" *Sentas v. Sentas*, 911 A.2d 266, 270 (R.I. 2006) (quoting *Small Business Loan Fund Corporation v. Gallant*, 795 A.2d 531, 532 (R.I. 2002)). Moreover, "the deliberate decision to prosecute an appeal without providing the Court with a transcript of the proceedings in the trial court is risky business." *Id.* (brackets omitted) (quoting *731 Airport Associates, LP v. H & M Realty Associates, LLC*, 799 A.2d 279, 282 (R.I. 2002)). Absent excusable neglect for failure to transmit a record, "[u]nless the appeal is limited to a challenge to rulings of law that appear sufficiently on the record and the party accepts the findings of the trial justice as correct, the appeal must fail." *Id.* (quoting *731 Airport Associates, LP*, 799 A.2d at 282).

In the case at bar, Westlo has failed to provide the Court with a proper transcript of the purported November 12, 2014 hearing on the commission's motion to intervene or the subsequent July 15, 2015 hearing conducted on Westlo's motion to vacate and motion to reconsider the respective orders granting the commission's intervention. After a careful review, we are further satisfied that the record in this

case is devoid of any explanation for defendant's failure to order the transcripts of these hearings. Without transcripts of these hearings, we are unable to conduct a meaningful review of the Superior Court's decisions on the issue of the commission's intervention. Our review is further complicated by the puzzling lack of a docket entry concerning the original filing of the commission's motion to intervene, as well as defendants' representation in their motion to vacate that the motion "is not on file on either the electronic filing system or in the [c]ourt's file." Accordingly, we are unable to determine whether the hearing justice who ruled on the motions concerning the commission's intervention abused his discretion in granting the commission's motion to intervene.[5] *See Petrone v. Davis*, 118 R.I. 261, 267, 373 A.2d 485, 488 (1977) (holding that this Court was unable to "ascertain whether the trial justice abused his discretion in not granting punitive damages" because the plaintiffs failed to provide a transcript).

---

[5] We pause to note that Westlo additionally failed to provide this Court with a transcript of the hearing(s) on the cross-motions for summary judgment. This is inconsequential to our holding *supra* on the issue of Westlo's liability as to counts one, two, three, and seven. We were able to locate a copy of the hearing justice's bench decision on the cross-motions for summary judgment in the record, which enabled us to conduct a proper review of the issues pertaining to the cross-motions for summary judgment.

## IV

## Conclusion

For the reasons stated above, we quash that portion of the March 5, 2020 Superior Court order that grants the plaintiffs' motion for summary judgment "as to the [l]iability of Westlo Management, on [c]ounts 1, 2, 3, and 7[.]" The record shall be remanded to the Superior Court for further proceedings in accordance with this opinion.

Justice Long did not participate.



## STATE OF RHODE ISLAND

### SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Curtis W. Andrade et al. v. Westlo Management LLC et al. |
| **Case Number** | No. 2020-112-M.P. (PC 12-6638) |
| **Date Opinion Filed** | June 17, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For Plaintiffs: Mark P. Gagliardi, Esq. |
| | For Defendants: Daryl E. Dayian, Esq. |